# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

James Craig Urban
Nancy Lee Urban
Residing together at 391 Concord Avenue Branson, Missouri 65616
Concord Trust
  Jacob-Franz: Dyck, Trustee
  Residing at 3000 Green Mountain Dr. Branson, MO 65615
      Plaintiffs, (Relators)

                v.

Case 1:07-cv-01451
Assigned to: Roberts, Richard W.
Assign. Date: 9/10/2007
Description: Pro Se General Civil

HOMECOMINGS FINANCIAL, LLC
2711 North Haskell Avenue
Dallas, Texas 75204
SOUTH AND ASSOCIATES
DOUGLAS A. HICK, ATTORNEY
JASON D. BAHANSEN, (MO #56505)
NICHOLAS L. ACKERMAN, (MO #54761)
JILL D. OLSEN, (MO #49835)
6363 College Blvd., Suite 100
Overland Park, KS 66211-1542
JAMES K. JUSTICE
PO Box 1030
Forsyth, MO 65653
KARL A. FINKENBINDER
1015 Hwy. 248 Ste. K
Branson, MO 65616
DEUTSCHE BANK TRUST COMPANY AMERICAS
130 Liberty St
New York, NY 10006
  IN THEIR PRIVATE CAPACITY, IN THEIR CORPORATE CAPACITY AND
  ALL MARITAL ASSETS
  DEFENDANTS, (RESPONDENTS)

DEMANDED Rule 38 FRCP
Demand for **trial by jury**

---

## COMPLAINT  AMMENDED

---

## Affidavit

We, James Craig Urban, Nancy Lee Urban and Jacob-Franz: Dyck, are competent to testify and make this affidavit as a follower of the Messiah, In the laws of the Almighty

RECEIVED

SEP - 7 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Supreme Creator, first and foremost and the laws of Man when they are not in conflict (Leviticus 18:3,4). Pursuant to Matthew 5:33-37 and James 5:12 [C.LR. v. Ferguson USCA 90-1430], let our yeas be yeas and our nays nay, as supported by your Federal law 97-280,96 Stat. 1211. We have personal knowledge of the matters stated herein and hereby asseverate understanding the liabilities presented in your <u>Briscoe v. Lahue 46 U.S. 325.</u>

## Identifying Parties

**Plaintiff (Relators)**

James Craig Urban
Nancy Lee Urban
      Initial owners of property, grantors to trust.
Concord Trust
      A common law pure trust organization created by Jacob-Franz: Dyck
Residing at 391 Concord Avenue Branson, Missouri 65616

  Jacob-Franz: Dyck, Trustee
      Residing at 3000 Green Mountain Dr. Branson, MO 65615


**Defendants (Respontents)**

HOMECOMINGS FINANCIAL LLC
2711 North Haskell Avenue
Dallas, Texas 75204
      Initial signers of first mortgage.

SOUTH & ASSOCIATES, P.C.
JASON D. BAHANSEN, (MO #56505)
NICHOLAS L. ACKERMAN, (MO #54761)
JILL D. OLSEN, (MO #49835)
DOUGLAS A. HICK ATTORNEY

6363 College Blvd., Suite 100
Overland Park, KS 66211-1542
      Attorneys representing Homecomings Financial.

JAMES K. JUSTICE
PO Box 1030
Forsyth, MO 65653

KARL A. FINKENBINDER
1015 Hwy. 248 Ste. K
Branson, MO 65616

DEUTSCHE BANK TRUST COMPANY AMERICAS
130 Liberty St
New York, NY 10006
      Purchased the property during the first year following signing the promissory note
      2004.

**All plaintiffs are sovereigns natural born persons as stated in the Treaty of Peace of 1783. All defendants are corporate entities as identified by their corporate charters be they State or Federal.**

## Complaint and Facts of Case

The property in question was placed into a Pure, irrevocable, common law trust, Concord Trust, with properly judicated laws and facts as part of the body of the trust. Months later the trust wanting to make money for and with, the property, by using the equity in the property, requested that a full accounting be established by the legal institution. All requests were unanswered. The trustee then involved a notary and certified Unites States mail. Still no response was received by the Plaintiffs. Shortly thereafter the property was purported sold by a person having no interest or equity in the property, this was done on two different occasions. No bidders were present and no bids were taken. This sales person then stated that the <u>individual</u> hiring her bought the property. Upon questioning the sales person and asking by what authority the property was sold; the response was that "This is what I was told to do by the law firm South & Associates in Kansas City." On July 24, 2007 a letter from South & Associates was received stating that legal action would be taken, without answering all questions. This cause is therefore being taken to answer the questions asked of the original purported note holder Homecomings Financial LLC..

The Defendants never responded to the demand of the Plaintiff to have documentation produced in support of an actual contract between the defendants and the

plaintiffs. There was also no accounting of payment to establish the amount of equity the Plaintiffs had, so that an arrangement could be made with a lending institution to possibly make that portion of the usable equity along with increased appraisal value work for the Plaintiffs. The defendant instead opted to sell the property and steal the equity and increased value for themselves. This is a manipulated theft which the buyer is protected from in a real property transaction by the Fair Debt Collection Act and the Lending Act laid down by U.S. Congress and have been protected and upheld by the U.S. Supreme Courts. This is shown in the following thirty pages, page 6 – 36.

### Jurisdiction

Comes the Relators, James Craig Urban, Nancy Lee Urban and Jacob-Franz: Dyck, all natural born free adults, to this honorable court sitting in Article III. Sec. 2:1 capacity under Federal Rules of Civil Procedures, Rule 9 (b) (c) (d) (e)(f) (g) and Rule 60 (b) for the discovery of the law and facts and upon the discovery of a scheme to defraud the Relators.

Under Federal rules of Civil Procedures Rule 9 (b) that fraud vitiated against contract or action ab initio. The jurisdiction of this court is invoked under Title 28 United States Code Section 1331 and 1332, this being an action arising under the Constitution of the United States and of the State of Missouri, Bill of Rights, Laws of the United States and Foreign Treaties of the United States. Deprivation under Color of State Laws, Statutes, ordinance, regulation, custom, and usage of a right, privilege, and immunity secured to Relators by the 1st. 4th, 5th, 6th, 7th, 8th and Articles of the Bill of Rights.

Relators pleadings set the jurisdiction of this cause in the jurisdiction of the American flag. Title 4 U.S.C. Sec. 1, of the united States of America. When Relators captured Taney County Court, State of Missouri, now is within the jurisdiction of a Federal Court, as all courts are United States Federal Courts because of the United States Federal Oath or affirmation and the Title 4 U.S.C. Sec. 1 American flag. Under the law of the Flag the United States Federal Flat Title 4 U.S.C. Sec. 1 and the Oath of Office makes all Courts Federal Courts.

The Respondent knew the Constitution of the United States laws were correct as sworn by the Oath or Affirmation contract, then acted with the acts stated herein, by the definition of Titles, Blacks law dictionary and the United States Codes and the Laws of Contract. The Respondent should have practiced the law with the skill and care and diligence in the examination by the case incorporated, the Respondent should have discovered the defect, but the Respondent was guilty of such want of care, skill and diligence in the examination of Plaintiff's rights and in advising Plaintiffs in the case incorporated. Plaintiffs were misled as no disclaimer of responsibility before the Respondent court proceedings were by beginning and Plaintiffs did not sign Constitutional rights away by the true intent of the facts stated in this cause shown by Plaintiffs.

## CONSTITUTIONAL QUESTIONS TO BE RESOLVED

1.  Does an original contract have to be produced in claiming a debt? The plaintiff's contention is <u>Yes</u>.

2.  Does a contractual agreement (Art. I sec 10) have the full force, and effect of enforcement by the proper legal means? Plaintiff's contention is <u>Yes</u>.

3.  Does a Land Patent have the absolute <u>possessory</u> interest of allodial title? The Plaintiff's contention is <u>Yes</u>.

4.  Does a deed of trust have possessory interest? Plaintiff's contention is **<u>No, it only has security interest</u>**.

5.  Does fraud involved in contract <u>vitiate</u> the contract? Plaintiff's contention is <u>Yes</u>.

6.  Does the enforcing government structure having been properly and duly established, including properly taken oath and properly bonded, have the right to violate the oath and carry insufficient bond? The plaintiff's contention is <u>No</u>.

7.  Does the owner of property have the absolute right of trial <u>by</u> jury of his peers? The plaintiff's contention is <u>Yes</u>.

8.  Can property be sized without proper cancellation of the contract? Plaintiff's contention is <u>No</u>.

## TRUSTS AS BUSINESS ENTITIES

Article 1, Section 10 of the US Constitution states in part "No State shall pass....any Law impairing the Obligation of Contracts." Since this Trust Indenture is a contract between the Creator, Trustees, and Beneficiaries, the indenture CONTROLS and no one has the

legal authority to violate its legal provisions. No one can change the Trust indenture except those empowered by the indenture.

Baker vs. Stern. ALR 462, the Court said "It is established by legal precedence that Pure Trusts are lawful, valid business organizations."

Burnett vs. Smith. SW 1007 (1922), the Court ruled "Trust or trust estate is a legal entity for almost all purposes as are Common Law Trusts."

Smith vs. Morse. 2 CA 524, A Pure Trust is established by contract, and any law or procedure in its operation, denying or obstructing contract rights impairs contractual obligation and is, therefore violative of the United States Constitution.

Crocker vs. Malley, 249 US SUP 39 at 270, A Pure Trust organization, consist of a US constitutional right to contract which cannot be abridged. The agreement when executed becomes a federal organization and not under laws passed by any of the several legislatures.

Elliot vs. Freeman. 220 US 178, A Pure Trust is not subject to legislative control. The United States Supreme Court holds that the Trust relationship comes under the realm of equity, based upon the common law, and is not subject to legislative restrictions as are corporations and other organizations created by legislative authority.

Schumann-Heinkvs. Folsnm. 159 NE 250, If it is free from control by Certificate holders, then it is a Pure Trust.

Berry vs. McCourt. 204 NE 2d 235 (1965), A Pure Trust is a contractual relationship in Trust form.

Trenton Cotton Company vs. Commissioner. 147 F 2d 33 (1945), "Exchange is the giving of one thing for another in kind and excluding money as a basis of measure."

Goodhue vs. State St. Trust Co., 267 Mass 28, "Certificates are not chattels, but are evidences of intangible rights."

## TRUSTS AS LEGAL ENTITIES

Weeks vs. Sibley, D.C. 269 F 135, "A Pure Trust is not illegal if formed for the express purpose of avoiding taxation."

Phillips vs. Blatchford. 137 Mass 510, "A Pure Trust is not illegal if formed for the express purpose of avoiding taxation."

Edwards vs. Commissioner. 415 F 2d 578,582,10th Cir. (1969), "Dignity of contract cannot be set aside because a tax benefit results either by design or accident."

Phillips vs. Blatchford. 137 Mass 510 (1884), as stated by Mr. Justice Holmes "An association does not become illegal simply because another very like it is taxed."

### Your Right to Private Contract!

### HALE v. HENKEL. 201 U.S. 43 at 89 (1906)

Hale v. Henkel was decided in 1906 by the united States supreme Court. Since it was the Supreme Court, the case is binding on all courts of the land, until another Supreme Court case says it isn't. Has another Supreme Court case ever overturned

Hale v. Henkel?

As a matter of fact, since 1906, Hale v. Henkel has been cited by all of the federal and state appellate court systems over 16 hundred times! Remember that in nearly every instance when a case is cited, it has an impact on the presidential authority of the cited case. The more times a case is held up as "the law," the more it becomes cast in granite.

How does that compare with other previously decided Supreme Court cases? Initial observations have shown that no other case has surpassed <u>Hale v. Henkel</u> in the number of times it has been cited by the courts. And, none of the various issues of this case have ever been overruled. On the persuasive side in <u>Hale v. Henkel</u> it was the United States Supreme Court which was speaking the "Law of the Land." How much more persuasive can a case be? The opinion of the court stated:

> *"The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to an investigation, so far as it may tend to incriminate him. He owes no duty to the State, since he receives nothing there from, beyond the protection of his life and property."*

> *"His rights are such as existed by the Law of the Land (Common Law) long antecedent to the organization of the State, and can only be taken from him by due process of law, and in accordance with the Constitution."*

> *"He owes nothing to the public so long as he does not trespass upon their rights."*

Hale v. Henkel is based on Article 1 Sec. 10 of the Constitution for the united States of America (several separate 50 states) established in 1789 <u>long before</u> the Federal Corporate U.S. was established in 1871! Here is part of that Article: (highlighted and underlined for clarity) (definition of <u>State</u> means: The political system of a body of

people who are politically organized; the system of rules by which <u>jurisdiction</u> and
authority are exercised over such a body of people.) (in America this is the Federal
Corporate govt. (D.C.) and at the 50 states level)

<u>No State shall</u> enter into any Treaty, Alliance, or Confederation; grant Letters of Marque
and Reprisal: coin money; emit Bills of Credit; make any Thing but gold and silver Coin
a Tender in Payment of Debts; <u>pass any</u> Bill of Attainder, ex post
facto Law, or <u>Law impairing the Obligation of Contracts</u> or grant any Title of
Nobility. (Esquire)

## PURE TRUSTS ARE LEGAL ENTITIES

"No state shall make any law impairing the obligation of contracts" Article 1,
Section 10-3 U.S. Constitution.

1.    The Business Trust Organization or "Pure Trust" is a contractual relationship, the
      parties thereto create their own Trust Organization.

2.    It provides Trust Certificate Units (TCU's) as evidence of limited rights. The
      holder of TCU's convey no legal title in the trust property, nor any voice in
      management and control thereof.

3.    Business is accomplished by Trustees and Minutes instituted as occasions arise.
      The Trustees are managers, with no one exercising any control over them.

4.    It is a legal entity and an artificial individual with rights almost equal to a
      natural individual. The Pure Trust is Irrevocable and no one has any
      reversionary rights to its assets. It can own property and conduct business
      like any person.

5.    A person may exchange assets, or any portion thereof, to it for *Trust*

*Certificate Units.* This is a Tax Free exchange (Supreme Court ruled if property received in exchange has no fair market value, it does not represent taxable gain to the recipient. <u>Burnett v. Logan,</u> 283 US 404). There is no holding back of any right or interest. TCU's never change.

6. TCU's can be distributed among family members or others free of any gift tax. No vested interest is transferred, only the right to receive distributions as directed by the trustees.

7. The Trust pays no estate tax because there is no estate owned by any person at death. All assets are owned fee simple by the Trust. TCU's have no intrinsic value and cannot be taxed because they are not owned at death.

## OTHER CASE LAW SUPPORTING THE CREATION AND STRUCTURING OF TRUSTS

Cite 1 An equity Pure Trust is a lawful, irrevocable, separate legal entity. In the case of <u>Baker vs. Stern</u>, 58 A.L.R. 462, the Court said that, "IT IS ESTABLISHED BY LEGAL PRECEDENT THAT PURE TRUSTS ARE LAWFUL, VALID BUSINESS ORGANIZATIONS. " In the case of <u>Burnett vs. Smith</u>, S.W. 1007 (1922), the Court ruled that 'TRUST OR TRUST ESTATE IS A LEGAL ENTITY FOR MOST ALL PURPOSES AS ARE COMMON LAW TRUSTS." In <u>Edwards vs. Commissioner</u>, 415 F 2d 578, 582,10th Cir. (1969) the Court said "DIGNITY OF CONTRACT CANNOT BE SET ASIDE BECAUSE A TAX BENEFIT RESULTS EITHER BY DESIGN OR ACCIDENT". In <u>Weeks vs. Sibley</u>, (D.C.) 269 F, 135, the Court said "A PURE TRUST IS NOT ILLEGAL IF FORMED FOR THE EXPRESS PURPOSE OF AVOIDING TAXATION."

Cite 2 A pure Trust is established by contract, and any law or <u>procedure</u> in its

12

operation, denying contract or obstructing contract rights impairs contract

obligation and is, therefore, violative of the United States Constitution. (Smith vs.

Morse. 2 CA 524.)

Cite 3  The Trustees of a Trust have all the power necessary to carry out their

obligations which they assume and their books and records are not subject to review

or subpoena, and so held in Boyd vs. U.S., 116 US 618; and also in Silver Thorne

Lumber Co. vs. U.S., 1251 US 385. (See *Article IV of the Constitution*.)

Cite 4 A Trust organization, consisting of a U.S. Constitutional right of contract

which cannot be abridged, the agreement when executed becomes a Federal

organization and not under the laws passed by any of the several legislatures.

(Crocker vs. MacCloy, 649 US SUP. 39 at 270.)

Cite 5 A Pure Trust is not subject to legislative control. The United States Supreme

Court holds that Trust relationship comes under the realm of equity, based upon

the common law, and is not-subject to legislative restrictions as are corporations

and other organizations by legislative authority. (Elliot vs. Freeman, 220 US 178.)

Cite 6 The creator of a Pure Trust may mold and give it any shape he chooses, and

he or the Trustees, upon such terms as he may choose to impose. (Shaw vs. Paine,

12 Alien (Mass) 293; also in Harwood vs. Tracy 118 MO 631,24 SW 214.)

Cite 7 "WE FIND IT INTOLERABLE THAT ONE CONSTITUTIONAL RIGHT

SHOULD HAVE TO BE SURRENDERED IN ORDER TO ASSERT ANOTHER."

(Simon vs. US, 390,389,1968.)

Cite 8 "THE CLAIM AND EXERCISE OF A CONSTITUTIONAL RIGHT

CANNOT BE CONVERTED INTO A CRIME." (Miller vs. US., 230 F 2d 486 at

489.)

Cite 9  In the case of <u>Miranda vs. Arizona</u>, 380 US 436 (1966) the Court said:

"WHERE FUNDAMENTAL RIGHTS UNDER THE CONSTITUTION ARE INVOLVED, THERE CAN BE NO RULEMAKING OR LEGISLATION WHICH CAN ABROGATE THEM."

Cite 10 Chief Justice, Marshall said in the case of <u>Marbury vs. Madison</u> 5 US (1 Cranch), 137,174,176, (1830) that: "ALL LAWS WHICH ARE REPUGNANT TO THE CONSTITUTION ARE NULL AND VOID." A Constitutionally valid Trust cannot be also "abusive", - nor can the Trust Creator or Trustees or Beneficiaries be penalized for doing what they have a Constitutional right to do.

Cite 11 "THERE CAN BE NO SANCTION OR PENALTY IMPOSED UPON ONE BECAUSE OF HIS EXERCISE OF CONSTITUTIONAL RIGHTS: <u>Sherar vs. Cullen</u>, 481 F 2d 946 (1973).

Cite 12 A Trust has a legal right to sue in its own name or be sued. In the case of <u>Waterman vs. MacKenzie</u>, 138 US 252 (1891), <u>the Court ruled that the Trust had a right to sue in its own name</u>. In the case of <u>U.S. vs. Carruthers</u> 219 F 2d (1925), the Court ruled that the Business Trust has the right to own property and be sued.

Cite 13 "<u>When any court violates the clear and unambiguous language of the Constitution, a fraud is perpetuated, and no one is bound to obey it</u>. (<u>State vs. Sutton</u>, 63 Minn. 147: 65 NW 262: 30 ALR 630.)

Cite 14 "No particular form of words is essential to create a Trust, provided there be reasonable, certainty as to the property, the objects, and the beneficiaries." <u>Chicago. M & St PR. Co. vs. Des Moines Union R. Co.</u> 254 U.S. 196 41 S.Ct. 81,65

L.Ed. 219.

Cite 15 "When a Trust is established and acknowledged, it does not need to be constantly reiterated or confessed." <u>Chicago, M & St. PR. Co. vs. Des Moines Union R. Co.</u>,

Cite 16 U.S. adopted Common laws of England with the Constitution. <u>Caldwell vs. Hill</u>, 178 SE 383 (1934).

Cite 17 If it is free of control by Certificate holders, then it is a Pure Trust. <u>Schuman-Heink vs. Folsom</u>, 159 NE 250 (1927).

Cite 18 A Pure Trust is a contractual relationship in Trust form. Berry vs. McCourt. 204 NE 2d 235 (1965).

Cite <u>19 Trustees are legal owners of property in Trust (fiduciary)</u>. <u>Johnson vs. Lewis</u>. 6 F 27 (1881).

Cite 20 Fair Market Value is determined by property received by taxpayer and not the F.M.V. of property transferred by taxpayer to the Trust. <u>Commissioner vs. Marshman</u>, C.A. 6 279 F 2d 27 (1960).

Cite 21 Certificates are personal property and convey no interest in the Trust Property. <u>Parker vs. Mona-Marie Trust</u>, 278 SE 321.

Cite 22 <u>Trustees of Pure Business Trusts</u> (not corporations) <u>are the owners of the Trust property in a fiduciary relationship</u>. A relationship of partners does not exist between Certificate Holders.  <u>Johnson vs. Lewis</u>, 6 F 27 (1881).

Cite 23 An association does not include a Pure Trust and is not taxed as a corporation, partnership, etc. <u>Pennsylvania Co. vs. U.S.</u>, (CA 3) 138 F 2d 869 (1943).

Cite 24 The basis for the terminology "Common Law Trust," in this connection, is

not that such organizations are the creatures of common law, as distinguished from equity, but that they are created under the <u>common law of contracts</u> and do <u>not depend</u> upon <u>any statute. Schumann-Heink vs. Folsom</u>, 159 NE 250.

Cite 25 If the organization is actually a Massachusetts Trust, or a Pure Trust, the shareholders are not liable for its debts. Re: Conover 295 111. App 443. <u>Greco vs. Hubbard</u>, 242 Mass 37.

Cite 26 The motive in forming a trust is generally not considered by Courts in determining validity, and it has been held that a Pure Trust is not rendered illegal because of the fact that it was formed for the express purpose of reducing or avoiding taxation. <u>Weeks vs. Sibley</u> (DC), 269 F 155: <u>Phillips vs. Platcliford</u>, 127 Mass 510.

Cite 27 The Court said, "It is not an evasion of legal responsibility to take what advantages may accrue from the choice of any particular form of organization permitted by the law." <u>Narragansett Mutual Fund Ins. Co. vs. Burnham</u>, 51 RI 371.

Cite 28 Capital Gains of the Trust were not taxable to taxpayer in view of the impossibility of reversion to him. <u>Bush vs. C.I.R.</u>, 1941,45 B.7CA. 609\, reversed on other grounds 133 F 2d 1005.

Cite 29 Latitude of power and activities of Pure Trust Trustee is greater than ordinary Trustees. <u>Ashworth vs. Hagan Estates.</u>, 181 S.E. 381 (1935).

Cite 30 The Power to tax is subject to the 5th and 14 Amendments (due process) provisions. Congress can deprive no one of due process. <u>Beeland Wholesale. Co. vs. Kauftnan</u>, 174 So. 516 (1937).

Cite 31 Certificates are not chattels but are evidences of intangible rights. <u>Goodhue</u>

vs. State St. Trust Co., 267 Mass 28.

Cite 32 Where taxpayer, prior to the taxable year, created separate Trusts for each of his five minor children which Trusts were to last for the life of the respective beneficiaries Revenue and no power to revoke the Trusts was reserved, by the grantor or vested in anyone else, the Trusts were irrevocable and the income of the Trusts is not-taxable to taxpayer. Act 1934, para. 166. Aver vs. C.I.R., 1941, B.T.A. 146. See Exhibit 8

## MEMORANDUM OF LAW
## PURSUANT TO CIVIL RIGHTS AND THE FEDERAL LAND PATENT

A.    US v. BEGGERLY 97 IS 731 (1998) "sets forth the Land Patent is a contract between the patentee and the U.S.,"

B.    The land grant/patent is a contract between the patentee and the U.S. ARTICLE 1 Sec 10, States shall pass no law impairing the obligation of contracts FLETCHER v. PECK 10 U.S. 87.3 Led. 162.

C.    A patent certificate, or patent issued, or confirmation made to an original grantee or his legal representative, embraces representatives of the grantee or assignee by contract as well as by law. HOGAN v. PAGE, 17L.Ed. 854.

D.    LYNCH v. HOUSEHOLD FINANCE CORP., 405 U.S. 538 (1972) clearly states, "Property does not have rights. People have rights. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a "person" right, whether the "property" in question be a welfare check, a home, or a savings account. In fact, a

fundamental interdependence exists between the personal right to liberty and the personal property right. Neither could have meaning without the other. The rights in property are the basic civil rights have long been recognized. Congress recognized these rights in 1871 when it enacted the predecessor of 42 U.S.C. 1983 and 1343 (3). We do no more than reaffirm the judgment of congress today.

E.    18 U.S.C. 242 provides for redress of grievance against public officials who violate their oath or constitution be it state or federal.

F.    42 U.S.C. 1983 provides that every person who, under color of any statue, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to deprivation of any rights privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceedings for redress.

G.    "The covenants run with the land, but only those that are in the patent proceedings." "Covenants must have been presented in the original patent proceedings or are forever barred." SUMMA CORP. v. CALIFORNIA. 466 US 198(1984)

H.    "Owner is free to do with his property what he wills, absent criminal intent, constitutional limitations, or liability for tortuous activities in connections therewith, "214 N.J. SUPER. 275. (FEB. 14.1990)

I.    The claimant of the land patent holds superior interest and title to the

property so patented. According to <u>63 Am Jur 2d pg. 422</u>. "Nothing passes by intendment or implication, and the grant will cover only that which is conveyed in clear language". 63<u>C Am Jur 2d pg 423</u>.

J.  In Federal Courts, the patent is held to be the foundation of title at law. <u>FENN v. HOLME. 21 HOWARD 481</u>.

K.  The U.S. land patent prevails over state constitution. Property rights are paramount. Not only does the U.S. constitution protect property rights, but the laws of the Federal Government do also. <u>STELLA HUGHES v. STATE OF WASHINGTON. 389 U.S. 290 (1967)</u>.

L.  "This Patent like all patents cannot be collaterally attacked, patents cannot be changed from the original" <u>U.S. v. CORONADO BEACH CO. 255 U.S. 427 (1921)</u>.

M   "<u>COLOR OF LAW STATUTES</u>" has no force and effect on the land patent. The State of Indiana, the County of Steuben does not have the subject matter jurisdiction on the lands transferred under Federal Land Patents. <u>Article 1 Sec 10</u>. States shall pass 'NO' law impairing the obligations of contracts.

N.  Any claims by a state to impose interest, control and jurisdiction over patented lands must be provided within the patent or is forever barred. <u>SUMMA CORP. v. CALIFORNIA. 466 U.S. 198 (1984)</u>,

0.  Terms of the patent are complete. So even changes in the land itself do not effect the patent. <u>KLAIS v. DANOWSKI 373 MICH. 262.29 N.W. 2d 414 KLAIS v. DANOWSKI 373 MICH. 281.129 N.W. 2d 423</u>.

P.  The land patent is a contract between the patentee and the U.S. "Article 1

Sec 10, States shall pass no law impairing the obligation of contracts" <u>U.S. v. BEGGERLY. 97 U.S. 731 (1998)</u>.

Q.    A patent is not subject to collateral attack. <u>WEST v. STANDARD OIL CO.. 278 U.S. 200. 73 LeD 265.49 s c T 138</u>.

R.    A covenant or easement added after the patent proceeding would be a collateral attack on the patent. <u>U.S. v. CORONADO BEACH CO. U.S. 427 (1921)</u>.

S.    The power of congress to dispose of its land cannot be interfered with, or its exercise embarrassed by state legislation, nor can such legislation deprive the grantees of the United States of the possession and enjoyment of the property granted by reason of any delay in the transfer of title after the initiation of proceedings for the acquisition. State statutes that give lesser authoritative ownership of title than a patent cannot be brought into federal court. <u>LANGDON v. SHERWOOD. 124 U.S. 74 80: GIBSON v. CHATEAU 880 U.S. 92</u>.

T.    The "Warranty Deed" is merely "Color of Title". <u>HOWTH v. FARRAR. 94 F2d654</u>. Color of title means: "That is a semblance or appearance of title, but not title in fact or in law" <u>BLACK'S LAW SIXTH ED</u>.

U.    A Patent for land is the highest evidence of Title, and is conclusive evidence against the Government and all claiming junior patents or titles. <u>U.S. v. STONE. 167 U.S. 178</u>.

V.    In Federal Courts, the patent is held to be the foundation of title at law. The plaintiff in ejectment must in all cases prove the legal title to the premises in

himself title will not be sufficient for recovery. The practice of allowing ejectments to be maintained in state courts upon equitable titles cannot affect the jurisdiction of the courts of the United States. <u>FENN v. HOLME. 21 HOWARD 481</u>.

W.   Congress has the sole power to declare the dignity and effect of titles emanating from the United States and the whole legislation of Government in reference to the public lands declare the patent to be superior and conclusive evidence of legal title. Until it issues, the fee is in the Government, which by patent passes to the grantee, and he is entitled to enforce the possession in ejectment. All who claim under patent are entitled to the same rights as the patentee. <u>BAGNELL v. BRODERICK. 13 PETER 436</u>.

X.   A patent certificate, or patent issued, is confirmation made to an original grantee or his legal representative, embraces representatives of the grantee or assignee by contract as well as by law. <u>HOGAN v. PAGE, 17 L. Ed. 854</u>.

Y.   Since road was not provided for in the original land grant, even though undisputed historical evidence for such was presented, the land owner won the quiet title suit on appeal. <u>HOAGLAND TRUST v. EMMET & CHARLEVOIX COUNTY ROAD COMMISSIONS. No 204409 Charlevoix Circuit Court LC Nofs). 96-077818 Cll (Michigan court of appeals reversal order eff. Jan. 2000)</u>.

Z.   Since road WAS PROVIDED for in the land patent. Bernal won the right of access to his property. <u>BERNAL v. JOEKS ET AL. 997 p. 2d 1192: 2000 Ariz. App. LEXIS 43; 317 Ariz Adv. Rep. 25 (Arizona court of appeals filed</u>

3/16/2000.

Aa.    Arizona Public Service sought to have a right of way granted for an existing power transmission line over patented land. The power transmission line had originally been licensed under a Federal Power Commission License No. 150 granted April 14,1922 and was due to expire April 30,1972. The Interior Dept. Board of Appeals rejected the appeal saying they had no authority or jurisdiction when the patented land did not specifically provide for such right of way. ARIZONA PUBLIC SERVICE COMPANY INTERIOR DEPT. decision on appeal. March 13.1972 - 5 IBLA 137 appealed from BLM ARIZONA 6014 -Phoenix Land Office.

Ab.    Terms of the patent are complete, so even changes in the land itself do not effect the patent. KLAIS v. DANOWSKI 373 Mich. 262.129 N.W. 2d 414.

Ac.    Terms of the patent are complete, so even changes in the land itself do not effect the patent. KLAIS v. DANOWSKI 373 Mich. 262.129 N.W. 2d 423.

Ad.    All land patents flow from treaty law. Ware, Administrator Jones, Plaintiff in Error, versus HYLTON et al. 3 U.S. LEXIS 400; 1L Ed. 568 3 Pall. 199.

Ae.    63C Am Jur 2d pg 424, "In the interpretation of the effect of a public grant, the law in effect at the time the grant was made governs. Furthermore, a state court must follow Federal decisions on the same subject."

Af.    All laws which are repugnant to the constitution are null and void. 5 US 137 MARBURY v. MADISON (1803).

Ag.    No state may convert a secured liberty or right into a privilege, issue a license or permit and charge a fee for it. MURDOCK v. PENNSYLVANIA (1943).

Ah.  An unconstitutional act is not law, it confers no rights, it imposes no duties, affords no protection, it creates no office, it is in legal contemplation, as inoperative as though it had never been passed. 118 U.S. 425-442 NORTON v. SHELBY COUNTY.

Ai.  Where rights secured by the constitution are involved, there can be no rule making or legislation passed which would abrogate them. 348 U.S. 436 pg. 491 MIRANDA v. ARIZONA.

Aj.  16 Am Jur 2d Section 177. late 2nd section 256; The general rule is that an unconstitutional statute, though having the form and the name of a law, is in reality no law, but is wholly void, and ineffective for any purpose, since unconstitutionality dates from the time of its enactment, and not merely from the date of the decision so branding it. No one is bound to obey an unconstitutional law and no courts are bound to enforce it.

Ak.  Liberal pleading requirements do not permit courts to dismiss 42 USC 1983 municipal liability claims for lack of factual specificity under rule 12 (b) (6) especially where the plaintiff is proceeding pro se. CIVIL PRODEDURE, CIVIL rights, McCORMICK v. CITY OF CHICAGO (10/16/2000) -No. 99-2365.

## Banking Fraud

In reviewing the literature in the libraries and internet it has become clear that there is a great schism in the banking industry; that being, who creates the money for the United States of America?  It is the depositors in the banks, of the Federal Reserve?  It is the

plaintiffs (relators) contention that the money is created by the consumer. The bank is merely the vehicle by which this is done. The method by which this is done is by the signing of a promissory note to the bank. The Federal Reserve in turn takes this note and sends it to the bank handling the transaction a check in the form of a wire transfer. The bank handling the transaction also forces, by demand, to sign a surety agreement from which the handling bank then creates a deed of trust and pays the County Assessors tax. This is the interest by which the handling bank then forecloses or sells the deed of trust to service mortgage companies for collection by foreclosure of property. There is only surety interest in the property as the Warranty Deed, given the consumer, has possessory interest. Thereby any scheme to take the land and property is a mere scheme to steal the property from the consumer; through, his signature creating the "money". Other county and State officials are often engaged to perpetrate this fraud. (See Exhibit A)

## BRIEF ON FRAUD

False Statement (B.L.D. 6th) - Statement knowingly false, made recklessly without honest belief in its truth, and with purpose to mislead or deceive. Third National Bank v. Schatten, C.L.A. Tenn. 81 F.2d 538, 540. The federal criminal statute governing false statements applies to three distinct offenses: falsifying, concealing, or covering up a material fact by any trick, scheme or device; making false fictitious or fraudulent statements or representation; and making or using any false document or writing. 18 U.S.C.A. 1001.

Mail & Wire Fraud (B.L.D. 6th) — Criminal offense of using mail or interstate wires to create or in furtherance of a scheme or artifice to defraud, or for

obtaining money or property by means of false or fraudulent pretenses. 18 U.S.C.A. 1341,1343.

B.L.D. 7th — Covers an act of using the U.S. Postal Service as in making false representation, through the mail to obtain an economic advantage. 18 U.S.C.A. 1341-1347.

Frauds, Statutes Of- This is the common designation of a very celebrated English statute (29 car. III, c.3) passed in 1677, which has been adopted, in a more or less modified form, in nearly all of the United States. Its chief characteristic is the provision that no suit or action shall be maintained on certain classes of contracts or engagements unless there shall be a note or memorandum thereof in writing signed by the party to be charged or by his authorized agent (e.g., contracts for the sale of goods priced at $500.00 or more; contracts for the sale of land; contracts which cannot, "by their terms be performed within a year; and contracts to guarantee the debt of another). Its object was to close the door to the numerous frauds and perjuries. It is more fully named as the "statute of frauds and perjuries". U.C.C. 2-201 provides that a contract for the sale of goods for the price of $500.00 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

False Arrest - An arrest made without proper legal authority. A species of false imprisonment, consisting of the detention of a person without his or her consent and without lawful authority. Reams v. City of Tucson, App. 145 Ariz. 340,

701 P. 2d 598,601. Such arrest consists in unlawful restraint of an individual's personal liberty or freedom of locomotion. <u>Johnson v. Jackson</u>, 43 111. App 2d 251, 193 N.E. 2d 485,489. An arrest without proper legal authority is a false arrest and because an arrest restrains the liberty of a person it is also false imprisonment. The gist of the tort is protection of the personal interest in freedom from restraint of movement. Neither ill will nor malice are elements of the tort, but if these elements are shown, punitive damages may be awarded in addition to compensatory or nominal damages. [This includes arresting property without due process and keeping rightful owners from use thereof.]

<u>Falsus in uno, falsus in omnibus</u> - False in one thing, false in everything. <u>Dawson v. Bertolini</u>, 70 R.E. 325,38 A. 2d 765, 768. It is particularly applied to the testimony of a witness who, if he is shown to have sworn falsely in one detail, may be considered unworthy of belief as to all the rest of his evidence.

<u>False and Fraudulent</u>, (B.L.D. 6th) - To amount to actionable "false and fraudulent representation", they must have been as to existing fact or known by one making them, from his superior knowledge, to have been untrue when made. <u>Burlinson v. Weis</u>, Mo. App. 1525. W. 2d 201,203.

<u>False Answers</u> - In pleading, a sham answer; one which is false in the sense of being a mere pretense set up in bad faith and without color of fact. Such answer may be ordered stricken on motion.

<u>False</u> - The word "false" has two distinct and well-recognized meanings: (1) intentionally or knowingly or negligently untrue: (2) untrue by mistake or accident or honestly after the exercise of reasonable care. <u>Metropolitan life Insurance Co. v.</u>

Adams, D.C. App., 37 A. 2d 345,350. A thing is called "false" when it is done, or made with knowledge, actual or constructive, that it is untrue or illegal, or is said to be done falsely when the meaning is that a party is in fault for its error. A statement (including a statement in a claim or document), is false if it is untrue by the person making it, or causing it to be made.

Bills of Attainder - Legislative acts, no matter what their form, that apply to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without judicial trial. United States v. Brown, 381 U.S. 437, 448-449; United States v. Lovett, 328 U.S. 303,315. An act is a "bill of pains and penalties" when the punishment is less severe; both kinds of punishment fall within the scope of the constitutional prohibition. U.S. Const. Art. I Sec. 9, cl3 (as to congress) Art. I Sec. 10 (as to state legislature).

Perjury - whoever (1) having taken an oath before a competent tribunal, officer or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify truly or that any written testimony, declaration, deposition or certificate by him subscribed, is true willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1747 of Title 28 U.S. Code, willfully subscribes as true any material matter which he does not believe to be true, is guilty of perjury and shall except as otherwise expressly provided by law be fined not more than $200.00 or imprisoned not more than five years or both. This section

27

is applicable whether the statement is made within or without the United States.

Scienter (B.L.D. 6th) - Knowledge by the representing party that the material facts have been falsely represented or omitted with an intent to deceive. Myzel v. Fields, 386 F. 2d 718. "Scienter" which requires both knowledge of a statement's falsity or reckless indifference to its truth and intent to deceive. Venturtech II v. Deliotte and Sells, 790 F. Supp. 576.

C.A. 3 (N. J.) 1997 - "Fundamental interests" are those which have their source, explicitly or implicitly, in constitution. Alexander v. Whitman. 114 F. 3d 1392.

C.A. D.C. 1998 - To show "fundamental miscarriage of justice" excusing procedural default, petitioner must show that constitutional violation has probably resulted in conviction, [adverse action to petitioner],

C.D. Ill. 1996 — Only laws affecting fundamental rights come within the scope of substantive due process, and "fundamental rights" are among those fundamental principles of liberty and justice which lie at the base of all civil and political institutions; fundamental rights are enumerated in constitution or are so fundamental in our society that the state may not unjustly take them away. U.S.C.A. Const. Amend. 14. Rubin v. Ikenberry, 933 F. Supp. 1425. Const. Law 252.5.

C.A. 10 (Kan.) 1996 - "Fraud on the court" is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements, or perjury; it is thus fraud where the court or a member is corrupted or influenced or influence is attempted, or where a judge has

not performed his judicial function, i.e., where the impartial function of the court has been directly corrupted. Weese v. Schukman, 98 F. 3d 542. - Fed. Civ. Proc. 2654.

C.A. 9 (1998) - "Fraud on the court" may occur when acts of party prevent his adversary from fully and fairly presenting his case or defense. Abatti v. CIR., 859 F. 2d 115. - Fed. Civ. Proc. 1654.

C.A. 5 (La.) 1966 - To establish "fraud on the court" it is necessary to show an unconscionable scheme which is designated to improperly influence the court in its decision; generally speaking, only most egregious misconduct, such as bribery of judge or members of the jury, or fabrication of evidence by party in which an attorney is implicated, will suffice. Fed. Rules of Civil Procedure 60 (b) (3) 28 U.S.C.A. First National Bank of Louiscill v. Ludtig, 96 F. 3d 1554. Fed. Civ. Proc. "Fraud on Court" refers to subcategory of fraud, in which fraud, misrepresentation or other misconduct is committed by court, its personnel or its officers. - In re Tri-Cran. Inc., 98 BR 609 - Fed. Civ. Proc. 2654.

Fraud on Court (B.L.D. 6th) - A scheme to interfere with judicial machinery performing tasks of impartial adjudication, as by preventing the opposing party from fairly representing his case or defense. Finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself as bribery of a judge or jury to fabrication of evidence by counsel and must be supported by clear, unequivocal and convincing evidence. In re: Coordinated Pretrial Proceedings in Antibiotic Antitrust Action. C.A. Minn., 538 F. 2d 180,195. It consists of a conduct so egregious that it undermines the integrity of the judicial

process. <u>Stone v. Stone Alaska</u>, 647 P. 2d 582, 586.

C.A. 1 (Me.) 1990 - Litigant commits "fraud on court" when litigant and attorney concoct some unconscionable scheme calculated to impair court's ability fairly and impartially to adjudicate dispute. - <u>Sandstrom v. Chem Lawn Corn.</u> 904 F. 2d 83. Fed. Civ. Proc. 1741.


### <u>Rule 60 Relief From Judgment or Orders</u>

(b) Mistakes; Inadvertence; Excusable neglect; Newly discovered evidence; Fraud; etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic) misrepresentation or other misconduct on adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated or it is no longer equitable that the judgment should have prospective application or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding, was ordered or taken.

C.A. 6 (Ohio) 1993 - "Fraud on the court" consists of conduct:

(1) on part of officers of the court;

(2) that is directed to judicial machinery itself;

(3) that is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth, that is positive averment or is concealment when one is under duty to disclose, that deceives the court. Demjanjuk v. Petrovsky, 10 F. 3d 338; Rison v. Demianiuk, 115 S. Ct. 295,513 U.S. 914. Fed. Civ. Proc. 2654.

C.A. 1 (Mass.) 1989 - Federal District Court can order dismissal or default where litigant has stooped to level of fraud on the court. Aoude v. Mobil Oil Corp., 892 F. 2d 1115.

HN 4 - Federal Courts - Federal District Court possesses inherent power to deny court's processes to one who defiles judicial system by committing fraud on court. Ibid. 1115.

HN 5 - Federal Civil Procedure - "Fraud on Court" upon which dismissal of action can be based, occurs where it can be demonstrated, clearly and convincingly, that party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate matter by improperly influencing trier or unfairly hampering presentation of opposing party's claim or defense. Ibid 1115.

D. Conn. 1996 - "Fraud by nondisclosure" involves failure to make full and fair disclosure of known facts regarding matter about which party assumes to speak. Amatulli v. People's Bank, 917 F. SUDD. 895.

Tenn. App. 1979 - In order to maintain successful cause of action for "fraudulent misrepresentation" there must be proof of false representation of

31

existing or past material facts, which false representation must have been made knowingly, without belief in its truth, or recklessly, and some person must have reasonably relied upon it and suffered some damages as result of such reliance. Graham v. First American National Bank, 594 S.W. 2d 723. Fraud in the inducement - Fraud occurring when a misrepresentation lends another to enter into a transaction with a false impression of the risk, duties, or obligations involved, an intentional misrepresentation of a material risk or duty reasonably relied on; thereby injuring the other party without vitiating the contract itself. Fraud in the factum - Fraud occurring when a legal instrument as actually executed differs from the one intended for execution by the person who executes it, or when the instrument may have had no legal existence.

N.D. Ohio 1996 - "Fraudulent inducement" is valid basis for finding contract void ab initio, and ordering recession. Ferro Corp. v. Garrison Industries. Inc.. 927 F. Supp.234.

Action void ab initio - action void from its beginning.

Fraud (B.L.D. 6th) - An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another, so that he shall act upon it to his legal injury.

### Webster's Third International Dictionary 1986

Fraud - la: an instance or an act of trickery or deceit esp. when involving

misrepresentation 3: the condition of being defrauded or deguiled.

C.A. (111.) 1994 - "Fraud" is concealment of material facts;

C.A. (I1U 1992 - Generally "fraud" which renders court orders void, implies some sort of knowledge that statements being made are false.

C.A. 5 (Tex.) - Elements of fraud include the following:

(1) misstatement or omission;

(2) of material facts;

(3) made with intent to defraud;

(4) on which the plaintiff relied; and

(5) which proximately causes the plaintiff injury.

Williams v. WMX Technologies. Inc., 112 F. 3d 175.

Tenn. Digest — A bill to enjoin the levy of execution on the ground of fraud is sufficient if it sets out the facts, though it is not specific in charging fraud. Wesssell v. Sharp, 39 S.W. 543.

Intent (D.C. Tenn. 1956) - Generally, fraudulent intent or equivalent thereof is an essential element of fraud, and such intent may be established by circumstance. Cumberland Portland Cement Co. v. R.F.C. 140 F. Supp. 793, affirmed 232 F. 2d 930.

Tenn. App. 1968 - The intention to defraud may be proven by acts, conduct and circumstance or by silence of one upon whom it is incumbent to speak concerning material matters which are entirely within his own knowledge. Vila v. Beach, 442 S.W. 2d 644. 59 Tenn. App. 547.

S.D. Miss. - Under Mississippi law "fraud" involves knowing and intentional

misrepresentation of material fact which causes party reasonably and justifiably to rely on that misrepresentation and suffer injuries as a consequence. <u>Black v. Carey Canada. Inc.</u> 791 F. Supp. 1120. Fraud 3.

<u>S.D. Ind. 1993 -</u> "Fraud" is any cunning, artifice or device used to cheat or deceive another. <u>Fuller Mortg. Assoc., Inc. v. Keegan</u>, 829 F. Supp. 1507.

<u>D. Mass. 1995</u> - "Fraud" entails intentional misrepresentation of material fact. <u>AT&T Co. v. IMR Capital Corp.</u>, 888 F. SUDD. 221.

<u>Tenn. 1983</u> - Basic rule prescribing the measure of damages for fraud is that the injured party should be compensated for the actual injuries sustained by placing him or her in the same position that he or she would have occupied had the injury not occurred. <u>Blasingame v. American Materials. Inc.</u> 654 S.W. 659.

Collateral Attack (B.L.D. 6th) - An attack on a judgment in any matter other than by action or proceeding, whose very purpose is to impeach or overturn the judgment; or state affirmatively, a collateral attack on a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment. <u>Travis v. Travis Estate</u>, 79 Wyo. 329,334 P. 2d 508. With respect to a judicial proceeding an attempt to void, defeat, or evade, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it. <u>May v. Caster</u>, 184 OK. 448,110 P. 2d 287.

Direct Attack on a judgment or decree is an attempt, for sufficient cause, to have it annulled, reversed, vacated , corrected, declared void or enjoined in a proceeding instituted for that specific purpose, such as an appeal, writ of error, bill of review, or injunction to restrain its execution; distinguished from a collateral attack, which

is an attempt to impeach the validity or binding force of the judgment or decree as a side issue or in a proceeding instituted for some other purpose. Ernell v. O'Fiel, Texas, Civ. App. 4415 S.W. 2d 653.

### Collateral Order Doctrine

U.S. Ca. 1987 - "Collateral order doctrine" recognizes that limited class of prejudgments orders are sufficiently important and sufficiently separate from underlying dispute that immediate appeals should be available; to qualify as a "collateral order" decision must conclusively determine disputed question, resolve important issue completely separate from merits of action and be effectively unreviewable on appeal from final judgment. 28 U.S.C.A. Sec. U.S. 370, 94 L.Ed.2d 389 - Fed. Cts. 572.1

Cohen Doctrine - The final avenue of appeal is the collateral order doctrine, established in Cohen v. Beneficial Indus. Loan Corp., 377 U.S. 541 (1949). The Supreme Court has said that orders entitled to Cohen appeals must:

(1) conclusively determine the disputed question;

(2) resolve an important issue completely separate from the merits of the action; and

(3) be effectively unreviewable on appeal from final judgment.

Cooper & Lvbrand v. Livasay, 437 U.S. 463,98 S. Ct. 245, 57 L.Ed. 2d 351 (1978).

## FACTS OF FRAUD

In November 2006, HOMECOMINGS FINANCIAL, LLC. was notified that the property at 391 Concord Drive, Branson, Missouri had been placed into a irrevocable, common law, contract, pure trust organization having absolutely no adhesions to corporate or statutory privileges. I Jacob:Franz, Dyck, am the Trustee of <u>Concord Trust</u>. The notice was reiterated several times during the winter and spring. It was defaulted because no answer had been given on the account or viewing the initial unaltered promissory note. In April 2007, HOMECOMINGS FINANCIAL, wrote a threatening letter stating that the property would be sold. On several occasions the property was placed on sale at the courthouse steps with no attendees bidding on or buying the property. This case is intended to bring forth all accounting of money transferred and viewing the original promissory note made by the Urbans.

As stated in the Brief, Fraud on the court was committed by the judge, clerk, and court recorder by continuing the conspiracy of larceny and stealing by the Mortgage Servicers and carried through by the sheriff. Although I hold the Warranty Deed, I was never named on any document. I spent numerous years in the service of my country. My father spent his life in the development, improvement and maintenance of the ICBM program and did so to his death. My Uncle and Grandfather died defending freedom and justice of the Christian beliefs of our Bill of Rights guarantying rights of religion, discovery in legal conflicts, and Trial by

Jury, of our peers.

Furthermore; this property has a <u>Federal Land Patent</u> on it held by the Urbans after doing their due diligence on the property. They were given the Land Patent from the Federal Land Patent office which was awarded initially through military service to this country. This government operates by the Constitutions, State and Federal, and the approval of such by <u>We The People</u>. I will not allow legal immoralists, having no allegiance to the United States of America, carry on a travesty of justice through fraud, conspiracy to commit fraud, larceny, stealing with no religious (of any type) scruples by the privileges granted to them by <u>We The People</u>. This type of egregious action must be stamped out at its beginning. Proper punishment must be rendered by this Court of Federal Claims as is proper and just; otherwise lady justice with a blindfold and scales is <u>peeking</u>.

By use of their color of office the Defendants grossly violated the Plaintiffs rights as stated herein and created through egregious schemes torts to steal the property of the Plaintiffs. Being learned and well educated these actions of torts must be prosecuted and the wrongs must be compensated to the Plaintiffs, for no public official is above the law. When a judge violates his oath of office, any judgment he makes is void, a nullity, has no efficacy, thereby cannot be enforced. Any enforcement (see <u>Scheuer v Rhodes and Yates v Village of Hoffman Estates</u>) by sheriff or deputies is void in itself and with the use of guns is punishable as a crime with life imprisonment.

The courts have long recognized that such action is predetermined by the judge through a conniving scheme frustrates the party affected adversely by such

criminal activity. For such reasons judges engaging in such activity are not immune

from civil or criminal action brought against them. The entire matter of the judge's

action is violative of his oath to the constitutions thereby losing subject matter

jurisdiction, for without it the judge lacks authority to sit on the bench.

Perpetrating such a heinous action is definitely not what our forefathers had in mind

when they created Article III of the constitution, and is certainly just cause to

remove the judge.

The Defendants were professional individuals whose profession was the

Administration of Justice. The justice was administered well below the level of

expectation by individuals having gone to institutions of higher learning (law school)

expressly for that of administering justice, and by taking an oath to uphold the

constitutions, state and federal. By this action all the sections of the Treaties stated

here in were violated by all the defendants in a conspiracy to defraud the Plaintiffs

of their rights. This includes the right to own property. Being Sovereign, not corporate

beings, as stated in the Definitive Treaty of Peace of 1783 between Britain

and the United States, they are willing to stand up and defend those rights. Refusing to

answer the accounting and viewing the promissory note, the BANK and all co-

conspirators created a fraud by not acknowledging the Federal Land Patent and Concord

Trust (a Pure Irrevocable Common Law Contract Trust Organization).

## Brief on Promissory Notes

The need to have a promissory note produced whenever demanded by either party

is expounded in the summery of a partial list of cases used below. These points of law

have been in existence since paper (recorded) contracts replaced the use of a club. The reader must bear in mind that our nation was created on the principles of inalienable rights as expounded in our beginning; therefore, The Holy Bible.

See In Re: SMS Financial LLc. v. Abco Homes. Inc. No.98-50117 February 18,1999 (5th Circuit Court of Appeals) and the Courts have held further that no part payments should be made on the bond or note unless the person to whom payment is made is able to produce the bond or note and the part payments are endorsed thereon.

"We find that a bank's credit card account is analogous to a promissory note, ..." Karen Smith Bird, Appellant, v. First Deposit National Bank, Appellee, 1999 Tex. App. LEXIS 3804, *;994 S.W.2d 280

Without proof of damages, there are no damages: i.e. American Red Cross v. Community Blood Center of the Ozarks, 257 F.3d 859 (8th Cir. 07/25/2001). If no one is able to produce the original "instrument", there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course: in the day of computer technology and the sophisticated means by which a document can be put together to make the copies say whatever the bank wants to have them say with [party]'s signature from another source attached, in fact. is no proof of anything and there is still no proof without competent evidence that [bank] is still holder of the alleged note or the true holder in due course to make a claim, can prove the existence of the alleged note in question and can show what the original contract actually was including

39

inspection of forgery and/or unauthorized markings/changes/allonges, can prove that the

party sued signed the alleged note, and can show an actual debt with original account

ledgers and/or records. Federal Circuit Courts have ruled that the only way to prove the

perfection of any security is by actual possession of the security. See <u>Matter of Staff

Morta. & Inv. Corp.</u>. 550 F.2d 1228 (9th Cir 1977).

 

    The Hawaii Supreme Court stated that since the "ledger had not been attached to

the affidavit, any information there from was inadmissible and should not have been

considered by the circuit court" and that the "[a]ffiant's testimony as to what was in the

ledger was inadmissible hearsay" <u>Pacific Concrete Federal Credit Union v.

Kauanoe</u>, 82 Haw. 334, 614 P.2d 936 (1980).

 

**Cases on Promissory Notes**

<u>McCay v. CAPITAL RESOURCES COMPANY. LTD</u>. 96-200 S.W.2d 1997

Where appellee apparently never possessed appellants' original note as provided in Ark

Code Ann. 4-3-309(a)(i)(Repl. 1991). but was required, even if it had, to have proven all

three factors specified in 4-3-309(a) and did not do so, appellee could not enforce the

original note's terms by the use of a copy; even if all three requirements in  4-3-309(a)

had been proven, the trial court was still obligated to ensure that appellee provided

adequate protection to the appellants from any future claim, and this. too, was not done.

First, as previously discussed, we mention the unfairness in these circumstances that, if a

duplicate was allowed in place of the original note, the McKays could later be subjected

to double liability if the actual holder of the note appeared.  Next, we add that the Rules

of Evidence are rules of the court involving legal proceedings, white the UCC is

composed of statutes of law that established the rights and liabilities of persons. Again, as

previously discussed, Capital Resources, as an assignee of the McKays' note, could not

sue on the underlying debt the McKays owed to Landmark Savings. For Capital

Resources to have prevailed in enforcing the McKays' note, it was required either to

produce the original or satisfy the requirements for a lost negotiable instrument under 4-

3-309(a) and (b). Because Capital failed to do either, we must reverse and remand.


Mortgage Securities Inc. v. Hartley LORD. No. 4D02-4051. July 23. 2003.

Mortgagee by assignment brought foreclosure action. The Circuit Court, 15th Judicial

Circuit, Palm Beach County, Edward Fine and John Wessel, JJ., entered summary

judgment for mortgagor. Mortgagee appealed. The District Court of Appeal. Stone, J.,

held that mortgagee could not maintain cause of action to enforce missing promissory

note or foreclose mortgage, in absence of proof that mortgagee or assignor ever had

possession of note.


LORRAINE C. TILLMAN v. VIRGINIA SAVAGE SMITH (07/25/85)

The purpose of the section is well expressed by commentator Cart W. Ehrhardt as

follows: [21]  The drafters of the Code excluded from the general rule of admissibility of

duplicates these documents because the possessor of the documents is the owner of the

obligation that they represent and the party who may bring a cause of action based on the

document Therefore, the person who possesses the duplicate may not possess the cause of

action. For example, if A makes a xerox copy of a promissory note and subsequently

negotiates the original to B,. under section 90.953(1), A, the transferor, is not able to sue on the xerox copy of the promissory note. [22]    Ehrhardt, Florida Evidence § 953.1 (2d ed. 1984). See also <u>Lowery v. State</u>, 402 So-2d 1287 (Fla. 5th DCA 1981). To fail under section 90.953(1), the agreement would have not only to evidence a right to the payment of money, but be "of a type that is transferred by delivery in the ordinary course of business with any necessary endorsement or assignment" (emphasis added).

<u>Mason v. Rubin</u>, 727 So.2d 283,37 UCC Rep.Serv.2d 1087 (Fla.App. Dist.4 02/10/1999) Establishing a lost negotiable instrument is governed by a different statute, section 673.3091, Florida Statutes (1993). The latter statute contains more stringent requirements than the former, and the trial court correctly concluded that the husband did not satisfy section 673.3091

**Enforcement of lost, destroyed, or stolen instrument.**

RSMo 400.3-309. (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. (This refers to statutory transactions only, not to common law transactions over $500.00)

<u>FIGUEREDO v. BANK ESPIR1TO SANTO</u> No. 88-1808. Jan. 31. 1989. FL Third District. The plaintiff failed to produce for admission into evidence the original

copy of a negotiable promissory instrument as is expressly required by section 90.953(1), Florida Statutes (1987). For this reason, the final judgment of foreclosure is vacated with directions for the trial court to receive the original promissory note in evidence.


SMS Financial LLc. v. Abco Homes, Inc. No.98-50117 February 18.1999 (167 F. 3d. 235; 5th Circuit Court of Appeals.) Where the complaining party can not prove the existence of the note, then there is no note. To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. Since no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. New Jersey common law dictates that the plaintiff prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the plaintiff is the owner and holder of the alleged note, and prove that certain balance is due and owing on any alleged note. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. See Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389 (Bkrtcy.D.N.J.1994), Unequivocally the Court's rule is that in order to prove the "instrument", possession is mandatory. In addition to the note, another element of proof is necessary — an

accounting that is signed and dated by the person responsible for tile account. Claim of

damages, to be admissible as evidence, must incorporate records such as a general ledger

and accounting of an alleged unpaid promissory note, the person responsible for

preparing and maintaining the account general ledger must provide a complete

accounting which must be sworn to and dated by the person who maintained the ledger.

See Pacific Concrete F.G.U. V. Kauanoe; 62 Haw. 334. 614 P.2d 936 (1980) GE Capital

Hawaii, Inc. v. Yonenaka 25 P.3d 8O7, 96 Hawaii 32, (Hawaii App 2001), Fooks v.

Norwich Housing Authority 28 Conn.L. Rptr,. 371, (Conn. Super.2000), and Town of

Brookfield v. Candlewood Shores Estates, Inc. '513A.2d 1218,201 Conn.1 (1986).


See § 90.953, West's Fla. Stat Annot. (1979) (Sponsor's Note); C. Ehrhardt,

Florida Evidence § 953-1. at 605 & n.5; Lowery v. State, 402 So.2d 1287,1288-89 (Fla.

5th DCA 1981).


90.953(1). Florida Statutes, is misplaced. The purpose of that subsection is to

require production of the original where there is an action on a negotiable instrument. In

such instances, the original instrument must be brought forward both to demonstrate the

right to payment and to preclude the possibility that the instrument has already been

negotiated.


[11]   State Street sought to establish the promissory note and mortgage under

section 71.011, Florida Statutes. State Street alleged that Hartley executed the note and

mortgage and that, after multiple assignments, the documents were assigned to State

Street by EMC Mortgage Corporation. Although State Street alleged in its pleading that the original documents were received by it, the record established that State Street never had possession of the original note and, further, that its assignor, EMC, never had possession of the note and, thus, was not able to transfer the original note to State Street. (emphasis added mine)

[12]  The trial court correctly concluded that as State Street never had actual or constructive possession of the promissory note. State Street could not, as a matter of law, maintain a cause of action to enforce the note or foreclose the mortgage. The right to enforce the lost instrument was not properly assigned where neither State Street nor its predecessor in interest possessed the note and did not otherwise satisfy the requirements of section 673.3091. Florida Statutes, at the time of the assignment. See <u>Slizyk v. Smilack</u>, 825 So. 2d 428.430 (Fla. 4th DCA 2002).

In <u>Mason v. Rubin</u>. 727 So. 2d 283 (Fla. 4th DCA 1999), the appellant brought a foreclosure action on a second mortgage, the trial court denied the foreclosure, and this court affirmed on the basis that the appellant had failed to establish the lost note under section 673.3091. Likewise, here, where State Street fatted to comply with section 673.3091, the trial court correctly entered summary judgment denying its foreclosure claim. *fn1  In contrast, here, the undisputed evidence was that EMC, the assignor, never had possession of the notes and, thus, could not enforce the note under section 673.3091 governing lost notes. Because EMC could not enforce the lost note under section 673.3091, it had no power of enforcement which it could assign to State Street.

<u>RAYMOND E. SHORES AND MARCENE G. SHORES v. FIRST FLORIDA RESOURCE CORPORATION</u> (10/11/72)  Appellants are entitled to assurance that they will not later be sued by a holder of these instruments.... If there are parties having any claim to these instruments they should be brought into the action and the matter determined.  The instruments should then be reestablished, recorded and an appropriate judgment entered.

## Exhibit <u>A</u>

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

| | | |
|---|---|---|
| BANK ONE, N.A., | ) | Case No. 03-047448-CZ |
| | ) | |
| Plaintiff, | ) | Hon. E.. Sosnick |
| | ) | |
| v. | ) | AFFIDAVIT OF |
| | ) | WALKER F. TODD, |
| | ) | EXPERT WITNESS FOR |
| DEFENDANTS | ) | |
| HARSHAVARDHAN DAVE and | ) | |
| PRATIMA DAVE, jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| Harshavardhan Dave and Pratima H. Dave<br>C/o 5128 Echo Road<br>Bloomfield Hills, MI 48302<br>Defendants, *in propria persona* | Michael C. Hammer (P41705)<br>Ryan O. Lawlor (P64693)<br>Dickinson Wright PLLC<br>Attorneys for Bank One, N.A.<br>500 Woodward Avenue, Suite 4000<br>Detroit, Michigan 48226<br>(313) 223-3500 |

Now comes the Affiant, Walker F. Todd, a citizen of the United States and the State of Ohio over the age of 21 years, and declares as follows, under penalty of perjury:

1. That I am familiar with the Promissory Note and Disbursement Request and Authorization, dated November 23, 1999, together sometimes referred to in other documents filed by Defendants in this case as the "alleged agreement" between Defendants and Plaintiff but called the "Note" in this Affidavit. If called as a witness, I would testify as stated herein. I make this Affidavit based on my own personal knowledge of the legal, economic, and historical principles stated herein, except that I have relied entirely on documents provided to me, including the Note, regarding certain facts at issue in this case of which I previously had no direct and personal knowledge. I am making this affidavit based on my experience and expertise as an attorney, economist, research writer, and teacher. I am competent to make the following statements.

## PROFESSIONAL BACKGROUND QUALIFICATIONS

2. My qualifications as an expert witness in monetary and banking instruments are as follows. For 20 years, I worked as an attorney and legal officer for the legal departments of the Federal Reserve Banks of New York and Cleveland. Among other things, I was assigned responsibility for questions involving both novel and routine notes, bonds, bankers' acceptances, securities, and other financial instruments in connection with my work for the Reserve Banks' discount windows and parts of the open market trading desk function in New York. In addition, for nine years, I worked as an economic research

47

officer at the Federal Reserve Bank of Cleveland. I became one of the Federal Reserve System's recognized experts on the legal history of central banking and the pledging of notes, bonds, and other financial instruments at the discount window to enable the Federal Reserve to make advances of credit that became or could become money. I also have read extensively treatises on the legal and financial history of money and banking and have published several articles covering all of the subjects just mentioned. I have served as an expert witness in several trials involving banking practices and monetary instruments. A summary biographical sketch and resume including further details of my work experience, readings, publications, and education will be tendered to Defendants and may be made available to the Court and to Plaintiff's counsel upon request.

## GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

3. Banks are required to adhere to Generally Accepted Accounting Principles (GAAP). GAAP follows an accounting convention that lies at the heart of the double-entry bookkeeping system called the Matching Principle. This principle works as follows: When a bank accepts bullion, coin, currency, checks, drafts, promissory notes, or any other similar instruments (hereinafter "instruments") from customers and deposits or records the instruments as assets, it must record offsetting liabilities that match the assets that it accepted from customers. The liabilities represent the amounts that the bank owes the customers, funds accepted from customers. In a fractional reserve banking system like the United States banking system, most of the funds advanced to

borrowers (assets of the banks) **are created by the banks themselves** and are not merely transferred from one set of depositors to another set of borrowers.

## RELEVANCE OF SUBTLE DISTINCTIONS ABOUT TYPES OF MONEY

4. From my study of historical and economic writings on the subject, I conclude that a common misconception about the nature of money unfortunately has been perpetuated in the U.S. monetary and banking systems, especially since the 1930s. In classical economic theory, once economic exchange has moved beyond the barter stage, there are two types of money: money of *exchange* and money of *account.*. For nearly 300 years in both Europe and the United States, confusion about the distinctiveness of these two concepts has led to persistent attempts to treat money of account as the equivalent of money of exchange. In reality, especially in a fractional reserve banking system, a comparatively small amount of money of exchange (e.g., gold, silver, and official currency notes) may support a vastly larger quantity of business transactions denominated in money of account. The sum of these transactions is the sum of credit extensions in the economy. With the exception of customary stores of value like gold and silver, the monetary base of the economy largely consists of credit instruments. **Against this background, I conclude that the Note, despite some language about "lawful money" explained below, clearly contemplates both disbursement of funds and eventual repayment or settlement in money of account (that is, money of exchange would be welcome but is not required to repay or settle the Note).** The factual basis of this conclusion is the reference in the

Disbursement Request and Authorization to repayment of $95,905.16 to Michigan National Bank from the proceeds of the Note. That was an exchange of the credit of Bank One (Plaintiff) for credit apparently and previously extended to Defendants by Michigan National Bank. Also, there is no reason to believe that Plaintiff would refuse a substitution of the credit of another bank or banker as complete payment of the Defendants' repayment obligation under the Note. This is a case about exchanges of money of account (credit), not about exchanges of money of exchange (lawful money or even legal tender).

5. Ironically, the Note explicitly refers to repayment in "lawful money of the United States of America" (*see* "Promise to Pay" clause). Traditionally and legally, Congress defines the phrase "lawful money" for the United States. Lawful money <u>was</u> the form of money of exchange that the federal government (or any state) could be required by statute to receive in payment of taxes or other debts. Traditionally, as defined by Congress, lawful money only included gold, silver, and currency notes redeemable for gold or silver on demand. In a banking law context, lawful money was only those forms of money of exchange (the forms just mentioned, plus U.S. bonds and notes redeemable for gold) that constituted the reserves of a national bank prior to 1913 (date of creation of the Federal Reserve Banks). *See,* Lawful Money, *Webster's New International Dictionary* (2d ed. 1950).    **In light of these facts, I conclude that Plaintiff and Defendants exchanged reciprocal credits involving money of account and not money of exchange; no lawful**

**money was or probably ever would be disbursed by either side in the covered transactions.**    This conclusion also is consistent with the bookkeeping entries that underlie the loan account in dispute in the present case.    Moreover, it is puzzling why Plaintiff would retain the archaic language, "lawful money of the United States of America," in its otherwise modern-seeming Note.    It is possible that this language is merely a legacy from the pre-1933 era.    Modern credit agreements might include repayment language such as, "The repayment obligation under this agreement shall continue until payment is received *in fully and finally collected funds*," which avoids the entire question of "In what form of money **or credit** is the repayment obligation due?"

6.  *Legal tender, a related concept but one that is economically inferior to lawful money because it allows payment in instruments that cannot be redeemed for gold or silver on demand, has been the form of money of exchange commonly used in the United States since 1933*, when domestic private gold transactions were suspended (until 1974)..    Basically, legal tender is whatever the government says that it is.    The most common form of legal tender today is Federal Reserve notes, which by law cannot be redeemed for gold since 1934 or, since 1964, for silver.    *See,* 31 U.S.C. Sections 5103, 5118 (b), and 5119 (a).

Note: I question the statement that fed reserve notes cannot be redeemed for silver since 1964. It was Johnson who declared on 15 Marcy 1967 that after 15 June

1967 that Fed Res Notes would not be exchanged for silver and the practice did stop on 15 June 1967 – not 1964. I believe this to be error in the text of the author's affidavit.

7. *Legal tender under the Uniform Commercial Code (U.C.C.)*, Section 1-201 (24) (Official Comment), is a concept that sometimes surfaces in cases of this nature.. The referenced Official Comment notes that the definition of *money* is not limited to *legal tender* under the U.C.C. *Money* is defined in Section 1-201 (24) as "a medium of exchange authorized or adopted by a domestic or foreign government and includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more nations." The relevant Official Comment states that "The test adopted is that of sanction of government, whether by authorization before issue or adoption afterward, which recognizes the circulating medium as a part of the official currency of that government. The narrow view that money is limited to legal tender is rejected." Thus, I conclude that the U.C.C. tends to validate the classical theoretical view of money.

HOW BANKS BEGAN TO LEND THEIR OWN CREDIT INSTEAD OF REAL MONEY

8. In my opinion, the best sources of information on the origins and use of credit as money are in Alfred Marshall, MONEY, CREDIT & COMMERCE 249-251 (1929) and Charles P. Kindleberger, A FINANCIAL HISTORY OF WESTERN EUROPE 50-53 (1984). A synthesis of these sources, as applied to the facts of the present case, is as follows: As commercial banks and discount houses (private bankers) became established in parts of Europe

(especially Great Britain) and North America, by the mid-nineteenth century they commonly made loans to borrowers by extending their own credit to the borrowers or, at the borrowers' direction, to third parties. The typical form of such extensions of credit was drafts or bills of exchange drawn upon themselves (claims on the credit of the drawees) instead of disbursements of bullion, coin, or other forms of money. In transactions with third parties, these drafts and bills came to serve most of the ordinary functions of money. The third parties had to determine for themselves whether such "credit money" had value and, if so, how much. The Federal Reserve Act of 1913 was drafted with this model of the commercial economy in mind and provided at least two mechanisms (the discount window and the open-market trading desk) by which certain types of bankers' credits could be exchanged for Federal Reserve credits, which in turn could be withdrawn in lawful money. Credit at the Federal Reserve eventually became the principal form of monetary reserves of the commercial banking system, especially after the suspension of domestic transactions in gold in 1933. Thus, credit money is not alien to the current official monetary system; it is just rarely used as a device for the creation of Federal Reserve credit that, in turn, in the form of either Federal Reserve notes or banks' deposits at Federal Reserve Banks, functions as money in the current monetary system. In fact, a means by which the Federal Reserve expands the money supply, loosely defined, is to set banks' reserve requirements (currently, usually ten percent of demand liabilities) at levels that would encourage banks to extend new credit to

borrowers on their own books that third parties would have to present to the same banks for redemption, thus leading to an expansion of bank-created credit money. In the modern economy, many non-bank providers of credit also extend book credit to their customers without previously setting aside an equivalent amount of monetary reserves (credit card line of credit access checks issued by non-banks are a good example of this type of credit), which also causes an expansion of the aggregate quantity of credit money. The discussion of money taken from Federal Reserve and other modern sources in paragraphs 11 et seq. is consistent with the account of the origins of the use of bank credit as money in this paragraph.

## ADVANCES OF BANK CREDIT AS THE EQUIVALENT OF MONEY

9. Plaintiff apparently asserts that the Defendants signed a promise to pay, such as a note(s) or credit application (collectively, the "Note"), in exchange for the Plaintiff's advance of funds, credit, or some type of money to or on behalf of Defendant. However, the bookkeeping entries required by application of GAAP and the Federal Reserve's own writings should trigger close scrutiny of Plaintiff's apparent assertions that it lent its funds, credit, or money to or on behalf of Defendants, thereby causing them to owe the Plaintiff $400,000. According to the bookkeeping entries shown or otherwise described to me and application of GAAP, the Defendants allegedly were to tender some form of *money* ("lawful money of the United States of America" is the type of money explicitly called for in the Note), securities or other capital equivalent to money, funds, credit, or something else of value in exchange (money of

54

exchange, loosely defined), collectively referred to herein as "money," to repay what the Plaintiff claims was the *money* lent to the Defendants. **It is not an unreasonable argument to state that Plaintiff apparently changed the economic substance of the transaction from that contemplated in the credit application form, agreement, note(s), or other similar instrument(s) that the Defendants executed, thereby changing the costs and risks to the Defendants.** At most, the Plaintiff extended its own *credit* (money of account), but the Defendants were required to repay in *money* (money of exchange, and *lawful money* at that), **which creates at least the inference of inequality of obligations** on the two sides of the transaction (*money*, including *lawful money*, is to be exchanged for *bank credit*).

MODERN AUTHORITIES ON MONEY

11. To understand what occurred between Plaintiff and Defendants concerning the alleged loan of *money* or, more accurately, *credit*, it is helpful to review a modern Federal Reserve description of a bank's lending process. *See*, David H. Friedman, MONEY AND BANKING (4th ed. 1984)(apparently already introduced into this case): "The commercial bank lending process is similar to that of a thrift in that the receipt of cash from depositors increases both its assets and its deposit liabilities, which enables it to make additional loans and investments. . . . When a commercial bank makes a business loan, it accepts as an asset the borrower's debt obligation (the promise to repay) and creates a liability on its books in the form of a demand deposit in the amount of the loan." (Consumer loans are funded similarly.) Therefore, the bank's original

bookkeeping entry should show an increase in the amount of the asset credited on the asset side of its books and a corresponding increase equal to the value of the asset on the liability side of its books. **This would show that the bank received the customer's signed promise to repay as an *asset*, thus *monetizing* the customer's signature and creating on its books a liability in the form of a demand deposit or other demand liability of the bank.** The bank then usually would hold this demand deposit in a transaction account on behalf of the customer. Instead of the bank lending its *money* or other assets to the customer, as the customer reasonably might believe from the face of the Note, the bank *created* funds for the customer's transaction account without the customer's permission, authorization, or knowledge and delivered the *credit* on its own books representing those funds to the customer, meanwhile alleging that the bank lent the customer *money*. If Plaintiff's response to this line of argument is to the effect that it acknowledges that it lent credit or issued credit instead of money, one might refer to Thomas P. Fitch, BARRON'S BUSINESS GUIDE DICTIONARY OF BANKING TERMS, "Credit banking," 3. "Bookkeeping entry representing a deposit of funds into an account." But Plaintiff's loan agreement apparently avoids claiming that the bank actually lent the Defendants *money*. They apparently state in the agreement that the Defendants are obligated to repay Plaintiff principal and interest for the "Valuable consideration (money) the bank gave the customer (borrower)." The loan agreement and Note apparently still delete any reference to the

bank's receipt of actual cash value from the Defendants and exchange of that receipt for actual cash value that the Plaintiff banker returned.

12. **According to the Federal Reserve Bank of New York, money is anything that has value that banks and people accept as money; money does not have to be issued by the government.** For example, David H. Friedman, I BET YOU THOUGHT. . . . 9, Federal Reserve Bank of New York (4th ed. 1984)(apparently already introduced into this case), explains that banks create new money by depositing IOUs, promissory notes, offset by bank liabilities called checking account balances. Page 5 says, "Money doesn't have to be intrinsically valuable, be issued by government, or be in any special form. . . ."

13. The publication, Anne Marie L. Gonczy, MODERN MONEY MECHANICS 7-33, Federal Reserve Bank of Chicago (rev. ed. June 1992)(apparently already introduced into this case), contains standard bookkeeping entries demonstrating that *money* ordinarily is recorded as a bank *asset*, while a bank *liability* is evidence of *money* that a bank owes. The bookkeeping entries tend to prove that banks accept cash, checks, drafts, and promissory notes/credit agreements (assets) as *money* deposited to create credit or checkbook money that are bank *liabilities*, which shows that, absent any right of setoff, banks owe *money* to persons who deposit *money*.. **Cash (money of exchange) is money, and credit or promissory notes (money of account) become money when banks deposit promissory notes with the intent of treating them like deposits of cash.** *See*, 12 U.S.C. Section 1813 (*l*)(1) (definition of

"deposit" under Federal Deposit Insurance Act). The Plaintiff acts in the capacity of a lending or banking institution, and the newly issued credit or money is similar or equivalent to a promissory note, which may be treated as a deposit of money when received by the lending bank.. Federal Reserve Bank of Dallas publication MONEY AND BANKING, page 11, explains that when banks grant loans, they create new money. The new money is created because a new "loan becomes a deposit, just like a paycheck does." MODERN MONEY MECHANICS, page 6, says, "What they [banks] do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts." The next sentence on the same page explains that the banks' assets and liabilities increase by the amount of the loans.

## COMMENTARY AND SUMMARY OF ARGUMENT

14. Plaintiff apparently accepted the Defendants' Note and credit application (money of account) in exchange for its own credit (also money of account) and deposited that credit into an account with the Defendants' names on the account, as well as apparently issuing its own credit for $95,905.16 to Michigan National Bank for the account of the Defendants. One reasonably might argue that the Plaintiff recorded the Note or credit application as a loan (money of account) from the Defendants to the Plaintiff and that the Plaintiff then became the borrower of an equivalent amount of money of account from the Defendants.

**15. The Plaintiff in fact never lent any of its own pre-existing money, credit, or assets as consideration to purchase the Note or credit agreement from the Defendants.** (Robertson Notes: I add that when the bank does the forgoing, then in that event, there is an utter *failure of consideration* for the "loan contract".) When the Plaintiff deposited the Defendants' $400,000 of newly issued credit into an account, the Plaintiff created from $360,000 to $400,000 of new money (the nominal principal amount less up to ten percent or $40,000 of reserves that the Federal Reserve would require against a demand deposit of this size). The Plaintiff received $400,000 of credit or money of account from the Defendants as an asset. GAAP ordinarily would require that the Plaintiff record a liability account, crediting the Defendants' deposit account, showing that the Plaintiff owes $400,000 of money to the Defendants, just as if the Defendants were to deposit cash or a payroll check into their account.

16. The following appears to be a disputed fact in this case about which I have insufficient information on which to form a conclusion: I infer that it is alleged that Plaintiff refused to lend the Defendants Plaintiff's own money or assets and recorded a $400,000 loan from the Defendants to the Plaintiff, which arguably was a $400,000 deposit of money of account by the Defendants, and then when the Plaintiff repaid the Defendants by paying its own credit (money of account) in the amount of $400,000 to third-party sellers of goods and services for the account of Defendants, the Defendants were repaid their loan to Plaintiff, and the transaction was complete.

17. I do not have sufficient knowledge of the facts in this case to form a conclusion on the following disputed points: None of the following material facts are disclosed in the credit application or Note or were advertised by Plaintiff to prove that the Defendants are the true lenders and the Plaintiff is the true borrower. **The Plaintiff is trying to use the credit application form or the Note to persuade and deceive the Defendants into believing that the opposite occurred and that the Defendants were the borrower and not the lender.** The following point is undisputed: The Defendants' loan of their credit to Plaintiff, when issued and paid from their deposit or credit account at Plaintiff, became money in the Federal Reserve System (subject to a reduction of up to ten percent for reserve requirements) as the newly issued credit was paid pursuant to written orders, including checks and wire transfers, to sellers of goods and services for the account of Defendants.

## CONCLUSION

18. Based on the foregoing, Plaintiff is using the Defendant's Note for its own purposes, and it remains to be proven whether Plaintiff has incurred any financial loss or actual damages (I do not have sufficient information to form a conclusion on this point). In any case, the inclusion of the "lawful money" language in the repayment clause of the Note is confusing at best and in fact may be misleading in the context described above.

## AFFIRMATION

19. I hereby affirm that I prepared and have read this Affidavit and that I believe the foregoing statements in this Affidavit to be true. I hereby further affirm that the basis of these beliefs is either my own direct knowledge of the legal principles and historical facts involved and with respect to which I hold myself out as an expert or statements made or documents provided to me by third parties whose veracity I reasonably assumed.

Further the Affiant sayeth naught.

At Chagrin Falls, Ohio

December 5, 2003

_____

WALKER F. TODD
   (Ohio bar no. 0064539)
Expert witness for the Defendants
Walker F. Todd, Attorney at Law
1164 Sheerbrook Drive
Chagrin Falls, Ohio 44022
(440) 338-1169, fax (440) 338-1537
e-mail:  westodd@adelphia.net

<mailto:westodd@adelphia.net>

### NOTARY'S VERIFICATION

At Chagrin Falls, Ohio
December 5, 2003

On this day personally came before me the above-named Affiant, who proved his identity to me to my satisfaction, and he acknowledged his signature on this Affidavit in my presence and stated that he did so with full understanding that he was subject to the penalties of perjury.

_____

Notary Public of the State of Ohio

# Conclusion

As can be seen from the previous case law that it is imperative: that in order to collect or file a complaint to collect on a promissory note proof of the following must occur:

(a) the existence of the note in question;

(b) that the party sued signed the note;

(c) that the plaintiff is the owner or holder of the note;

(d) that a certain balance is due and owing on the note.

As seen in Exhibit A the Bank goes to the Federal Reserve for it's money to loan, since it is prohibited to loan it's depositors money. So the bank in all practicality has no real interest in the transaction.

As can be seen from Exhibit B an attempt an attempt was made for several months prior to stop payments which were placed in a bank account in the event an accounting would occur with a balance due and the original promissory note produced for identification by its signer. As can be seen in Exhibit C from another case there were two promissory notes as brought forward by a bank which had conflicting signatures: 1) had been stamped as "pay to the order of …… Benes, officer." This is obviously altering the note. The other point being that the V.A. has to approve any assumability of the note since the V.A. is the insurer of the note. The same holds true by any federally insured note, Fanny Mae, Freddie Mae, or Independent Insurance of promissory notes,

62

It is therefore imperative that when a down line transfer of note occurs in order that there is a cause of court action all the above must be shown to have any jurisdiction or cause of action by the moving party.

Prayer

Plaintiffs pray that this action will produce an accounting of all monies transferred and the viewing of the original unaltered promissory note. Thereby, leaving the property as is in the hands of the trust with the land patent intact. And other considerations.

I am not an expert in the law; however, I know right from wrong. If there is any human being damaged by any statement herein, if he will inform me by facts I will sincerely make every effort to amend my ways. I hereby and herein reserve the right to amend and make amendments to this document as necessary in order that the truth may be ascertained and proceedings justly determined. If the parties given notice by means of this document have information that would controvert and overcome this affidavit, please advise me in written affidavit form within the allotted time (21 days) from receipt hereof providing me with your counter affidavit by all requisite actual evidentiary fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that this affidavit statement is substantially and materially false sufficiently to change materially my status and factual declarations. Your silence stands as consent to, and tacit approval of, the factual declarations herein being established as fact as a matter of law. May the

will of our Heavenly Father through the power and authority of the blood of his Son be done on earth as it is in Heaven.

Service to the agent is service to the principle; Service to the principle is service to the agent. Further sayeth affiant not.

Date: July 18, 2007

James Craig Urban

Nancy Lee Urban

Jacob-Franz: Dyck
3000 Green Mountain Drive
100-417
Branson, Missouri [65616]

*for exhibit B*

## AFFIDAVIT

I, Robert Syversen, am of sound body and mind. I am of legal age and have personal knowledge of the facts related in this affidavit. I know the following to be true and correct in content and form and state herein that the exhibits of the mortgage corporation, HSBC, came to me in one form by hand delivery from a Robert J. Grice of Alstate Process Service Inc. and than later with a variation (ie. altered format) via the United States Postal Service. They have not been altered or changed in any form or manner. Further sayeth affiant not.

_____
Robert R. Syversen
16 Dean Road
Hudson Falls, NY 12839


Sworn to and subscribed before me this 6th day of September, 2007.

Signiture of Notary Public:

JOSEPH C. MELUCCI
Notary Public, State of New York
Washington Co. #01ME6073945
Commission Expires April 29, 2010



NOTE

COPY  **EXHIBIT B**

## NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

June 28, 2002                    Glens Falls                    NEW YORK
[Date]                           [City]                         [State]

143  FEEDER DAM ROAD, MOREAU, NY  12803

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $102,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is HSBC MORTGAGE CORPORATION (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.8750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st     day of each month beginning on August 01, 2002     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 01, 2032     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY  14043

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 670.07

### 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

NY 3322                                                           0079440916

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for Veterans Affairs

  Form 3233 1/01
Amended 6/00
-5G(NY) (0005)
VMP MORTGAGE FORMS - (800)521-7291

Page 1 of 3                    Initials: _____



EXHIBIT

B

  *EXHIBIT B*

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of  **Fifteen**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **4.00 %** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

NY 3322

0079440916

-5G(NY) (0008)                        Page 2 of 3                        Form 3233 1/01
Initials: *KPS*

EXHIBIT B

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge ☐ Other [Specify] ☐ Other [Specify]

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
ROBERT R. SYVERSEN                -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                       -Borrower

_____ (Seal)     _____ (Seal)
                                  -Borrower                                       -Borrower

*[Sign Original Only]*

NY 3322                                                                      0079440916

-5G(NY) (0005)                      Page 3 of 3                              Form 3233 1/01

*EXHIBIT B*

STATE OF NEW YORK )
                               ) ss.:
COUNTY OF WARREN )

On this 28th day of June, 2002, before me, the undersigned, a notary public in and for the said state,  personally appeared ROBERT R. SYVERSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his  capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

*EXHIBIT B*

*GF-30*

*0079440916*

# NOTE

**NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.**

June 28, 2002                    Glens Falls                              NEW YORK
[Date]                           [City]                                   [State]

143   FEEDER DAM ROAD, MOREAU, NY  12803

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 102,000.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  HSBC MORTGAGE CORPORATION (USA)

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.8750 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st       day of each month beginning on August 01, 2002       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on July 01, 2032      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2929 WALDEN AVENUE, DEPEW, NY  14043
                                    or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 670.07

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

**NY 3322**                                                                   0079440916

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Amended for Veterans Affairs

-5G(NY) (0005)           Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291      Amended 6/00

Page 1 of 3              Initials: _RPS_



EXHIBIT

_C_



EXHIBIT B

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.00 %** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

NY 3322                                                          0079440916

Form 3233 1/01

Initials: _RPS_

-5G(NY) (0005)                         Page 2 of 3

*EXHIBIT B*

**10. ALLONGE TO THIS NOTE**

If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge          ☐ Other [Specify]          ☐ Other [Specify]

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ROBERT R. SYVERSEN                    -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                      -Borrower

Pay to the order of, without recourse

_____ (Seal)          _____ (Seal)
                                      -Borrower HSBC MORTGAGE CORPORATION (USA)     -Borrower

By: _____
Christine M. Benes, Officer

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                      -Borrower

*[Sign Original Only]*

NY 3322

0079440916

-5G(NY) (0006)                    Page 3 of 3                    Form 3233 1/01

STATE OF NEW YORK   )
                  ) ss.:
COUNTY OF WARREN   )

      On this 28th day of June, 2002, before me, the undersigned, a notary public in and for the said state, personally appeared ROBERT R. SYVERSEN, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

*EXHIBIT B*

## AFFIDAVIT

The undersigned representative of **HSBC MORTGAGE CORPORATION USA,**
being duly sworn and under oath, deposes and says:

That he/she is an officer of the financial institution, a nationally chartered commercial bank or lending institution or organization purchasing promissory notes, hereinafter called "bank". That as an officer of the bank, he/she has the authority to execute this affidavit on behalf of the bank and to bind the bank to its provisions. It is understood that an exchange is not a loan. It is understood that the borrower's promissory note is not used to fund any check. It is understood that the bank does not record the promissory note as a bank asset offset by a bank liability. It is understood that the bank complies with and follows the Federal Reserves Bank's policies and procedures. It is understood that the bank does not use the same or similar bookkeeping entry to record the promissory note as a loan to the bank. It is understood that when banks participate in granting loans the economic effect is not the same or similar to stealing, counterfeiting, or swindling. Banks who follow the Federal Reserve Bank's policies and procedures deny customers neither equal protection under the law, nor money, nor credit. The bank fully discloses to each and every borrower all material facts concerning if the borrower

provides the funds to issue the bank loan check or if other depositors or investors fund the bank loan check. It is understood that the one who funded the loan should be repaid his money. It is understood that cash is the money and a bank liability indicates that the bank owes the cash. I agree that if I have made a false statement regarding bank loans, then any and all loans or alleged loans issued or purchased at the bank are forgiven, without recourse, and shall immediately be considered null and void. Signed under penalty of perjury.

Signature of Bank Officer _____*Lynne Ruberto*_____ **LYNNE RUBERTO #8396 ASSISTANT VICE PRESIDENT**

Print name of Bank Officer _____*Lynne Ruberto*_____

Address of Bank _____*2929 Walden Avenue*_____

City/State/Zip _____*Depew, NY 14043*_____

Sworn to and subscribed before me this _30_ day of _September_, 20_05_.

Signature of Notary Public _____*Dawn M. Funderburk*_____

DAWN M. FUNDERBURK
No. 01FU6098515
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 09/15/2007

-2-

EXHIBIT
**G**

*EXHIBIT C*

JOHN FREDERICK GIBSON
NOTARY PUBLIC
c/o POST OFFICE BOX 192
NIXA, MO 65714

RR 239 577 333 US

March 17, 2007

*JFG*

HOMECOMING ▄▄▄ FINANCIAL                **FINAL NOTICE**
PO BOX 890036
DALLAS, TX 75389

RE: Loan No. 0421967928

To whom it may concern:

My name is John Gibson, I am a NOTARY PUBLIC commissioned by the STATE OF
MISSOURI. I have been requested to act as fiduciary in the settlement of account number
0421967928 for and on behalf of "Concord Trust" and Jacob-Franz: Dyck (Trustee). As
you can see I have enclosed copies of three letters that were sent to you concerning the
matter of this account on 11/13/2006, 12/27/2006 and 2/20/2007 consecutively by
registered mail. I have been assured by Mr. Dyck that he has received no response from
HOMECOMING FINANCIAL or any other institution concerning this matter. I have
also been informed that Mr. Urban, the endorser of the note for this account, has never
been contacted either.

Mr. Dyck is making this request one final time through me, John Gibson, his fiduciary, and
Notary Public to examine the original note in it's entirety and a complete ledger of the
account from the initial signing of the documents by Mr. James C. Urban. This is
necessary because of the transfer of the property from Mr. Urban to Concord Trust for
complete settlement of this account. Mr. Dyck has informed me that he is willing to travel
to whatever location in the continental United States at his expense to view the documents
requested. Please direct your response in writing to me at the address above. Thank you
for your cooperation.

Sincerely,

*John Frederick Gibson*

JOHN FREDERICK GIBSON
NOTARY PUBLIC

cc Jacob-Franz Dyck, James C. Urban

EXHIBIT C

RR 239 577 333 US

Jacob Franz Dyck Trustee
Concord Trust
3000 Green Mountain Dr.
110-417
Branson, MO 65616
(417) 230-8978

Homecomings Financial
2711 North Haskell Ave, Ste. 1300
Dallas, TX. 75204

Reference to: loan # 0421967928
James C. Nancy L. Urban
391 Concord Ave
Branson, MO 65616

December 27, 2006

Dear Sir. / Mam,

On November 13, 2006, a letter was sent to you requesting various items pertaining to the purported debt you have with Jim Urban. I have requested the documents to verify the debt. Since you have not responded you are given 10 day notice from receipt of this letter that if I do not get the documents requested within 10 days, no more payments will be made to you.

The payments will be placed on a monthly basis into an account until it is determined if Jim Urban owes you the debt.

If such is the case that the debt is owed, you will receive the full amount from this account.

If the debt is not proven you will not receive any money that you purport is owed to you.

Thank you

_____
Jacob-Franz: Dyck

EXHIBIT C

RR 239 577 333 US

James C. Urban
391 Concord Ave
Branson, MO 65616
/ PO Box 7770
Branson, Mo 65615

Homecomings Financial
PO Box 890036
Dallas Texas 75389

In reference to:
Loan Number 0421967928

2-20-2007

## AUTHORISITATION TO CALL OR CONTACT

To whom it may concern,

I James C. Urban hereby authorize "Homecomings Financial" to contact Mr. Jacob Franz Dyck the trustee of said property under Homecomings Loan Number 0421967928. The property has been placed in a trust of which he is the person in charge. He may be contacted by phone or mail at the following address & numbers.

Jacob-Franz: Dyck
3000 Green Mountain Dr.
G-417
Branson, MO 65616
Phone (417) 337-9844
Cell Phone (417) 230-8978

We also request that all further contact with us be by mail only.

Thank you,


James C. Urban

EXHIBIT C

RR 239 577 333 US

Homecomings Financial
PO Box 890036
Dallas, Texas 75389

Loan Number 0421967928

11-13-2006

To whom it may concern,

The property James C. & Nancy L. Urban are paying for has been placed into a pure common law irrevocable Trust named, "Concord Trust," as trustee I am requesting a total ledger of accounting from it's initial signing of the documents.  Please reflect all money disbursement including but not limited to interest, principle, late payment and taxes.

Thank you    _____

Jacob-Franz: Dyck

3000 Green Mountain Dr.
G-417
Branson, MO 65616

Phone (417) 230-8978

*EXHIBIT C*

# AFFIDAVIT OF SERVICE

I am an American Citizen, over the age of 18 and not a party to the within action. My postal location is c/o _PO BOX 192, NIXA_ ~~Springfield~~, Missouri state, non-domestic US Post.

On the date below, I served by Registered Mail No. RR 239 577 333 US, the following document(s) described as:

1. FINAL NOTICE letter to HOMECOMING FINANCIAL dated March 17, 2007.
2. Copy of AUTHORIZATION TO CALL OR CONTACT dated 2/20/2007.
3. Copy of letter to HOMECOMING FINANCIAL dated December 27, 2006.
4. Copy of letter to HOMECOMING FINANCIAL dated 11/13/2006.
5. Affidavit of Service

On the interested party(s) to this action as follows:

<u>HOMECOMING FINANCIAL</u>

<u>P.O. BOX 890036</u>

<u>DALLAS, TX 75389</u>

<u>SPRINGFIELD, IL 62756</u>

I declare under penalty of perjury under the laws of the united States of America that the forgoing is true, correct, and complete.

Executed at Springfield, Missouri state.

Dated: _MARCH 19, 2007_

Signed: _Frederick_
Server's Appellation:

EXHIBIT C

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3. Also complete Item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

HOME COMING FINANCIAL
PO BOX 890036
DALLAS TX 75389

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _R Bla[...]_   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery
MAR 23 2007

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☒ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)   RR 239 577 333 US

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-15[...]

---

Registered No. RR 239577333 US   Date Stamp

| | | |
|---|---|---|
| Reg. Fee $ 7.90 | Special Delivery $ | |
| Handling Charge | Return Receipt $ | 85 |
| Postage .63 | Restricted Delivery $ | |
| Received by | | |

Customer Must Declare Full Value $ ∅   ☐ With Postal Insurance   ☒ Without Postal Insurance

Domestic Insurance Is Limited To $25,000; International Indemnity Is Limited (See Reverse)

FROM
JOHN FREDERICK GIBSON
PO BOX 192
NIXA, MO 65714

TO
HOME COMING FINANCIAL
PO BOX 890036
DALLAS, TX 75389

PS Form 3806, June 2000   **Receipt for Registered Mail**   (Customer Copy)
(See Information on Reverse)

---

JAMES RIVER
SPRINGFIELD, Missouri
6581499998
2842231581-0096
(800)275-8777   10:17:30 AM

03/19/2007

| Product Description | Sales Receipt Qty | Sale Unit Price | Final Price |
|---|---|---|---|
| DALLAS TX 75389 | | | |
| First-Class | | | $0.63 |
| 1.50 oz. | | | |
| Registered | | | $11.85 |
| Return Rcpt (Green Card) | | | $7.90 |
| Insured Value : | | | $0.00 |
| Article Value : | | | $0.00 |
| Label #: | | | |
| RR239577333US | | | |
| Issue PVI: | | | $10.38 |

Total: $10.38
Paid by:
Cash $20.00
Change Due: -$9.62

Bill#: 1000403784001
Clerk: 08

All sales final on stamps and postage.
Refunds for guaranteed services only.
Thank you for your business.
Customer Copy

*EXHIBIT C*

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• **Sender:** Please print your name, address, and ZIP+4 in this box •

JOHN FREDERICK GIBSON
P O BOX 192
VIXA, MO 65714