**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**RECEIVED**

OCT 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

James Craig Urban

et al

v.

HOMECOMINGS FINANCIAL, LLC

et al

Case 1:07-cv-01451
Assigned to: Roberts, Richard W.
Assign Date: 8/10/2007
Description: Pro Se General Civil

DEMANDED Rule 38 FRCP
Demand for **trial by jury**

---

Answer to Judges requested questions
Jurisdiction of Territorial Courts
Jurisdiction of US District Court for the District of Columbia

---

Affidavit

We, James Craig Urban, Nancy Lee Urban and Jacob-Franz: Dyck, are competent to testify and make this affidavit as a follower of the Messiah, In the laws of the Almighty Supreme Creator, first and foremost and the laws of Man when they are not in conflict (Leviticus 18:3,4). Pursuant to Matthew 5:33-37 and James 5:12 [C.I.R. v. Ferguson USCA 90-1430], let our yeas be yeas and our nays nay, as supported by your Federal law 97-280, 96 Stat. 1211. We have personal knowledge of the matters stated herein and hereby asseverate understanding the liabilities presented in your <u>Briscoe v. Lahue 46 U.S. 325.</u>

Jurisdiction I

The Movant, James-Craig: Urban natural born freeman in the above captioned and enumerated cause, appearing specially, not generally, brings forth the instant petition for discovery and disclosure of the Character of the General Sessions Courts of States, Counties, and Municipalities defendants". The matter being question of Law, arising under the federal constitution, state constitutions and congressional acts, movant is entitled to raise such question where the Nature and Cause......... provision under the sixth amendment, provides that an accused be informed. To be properly informed, an accused-party must be able to have knowledge of the character of the court, in order that James-Craig: Urban may perfect pleadings and defense which are entertainable before the proper court. If, standing before an Article I, Administrative court, a pleading-party would need to avail oneself of administrative Law. If, before as Article III Constitutional court, the pleading party would set one self's pleading to the tone and venue of such court, and if accused under Admiralty Maritime-Equity Law, the pleading party would form ones actions and defenses under admiralty-equity Law. If, before a State Constitutional court, supreme court, county

court, statue court, city court, special court, general session court, etc. the pleading party would set one self's pleading to the tone and venue of such court. Thus, having knowledge of the character of the court is crucial to the process.

In the Nature of Corpus Juris Secundum, Chapter XII, Section 11 – Courts: It provides that, "the Jurisdiction of the court must be affirmatively shown on the face of the record" and as Section 12, it states further that, "in an action in a court, it is presumed that the court is without jurisdiction...until the contrary, affirmatively appears on the record."

Where the cause under enumeration, supra, is concerned, the record of the court is silent as to the character of the court, the article of the constitution under which the court is created, or the congressional act under which the court is empowered and authorized to function. A "hoodwinked" party cannot be deemed to be duly informed, or can one be said to have knowingly and intelligently pleaded one's cause if one knew not the Nature of the Law, and court in which he appeared. It therefore becomes the duty of this court or a court of competent jurisdiction to reveal the proper, lawful and legal character of a general sessions court of County; or other Courts of Florida.

The Sixty first Congress, during the Congress's third session, created the "Act," of March 3, 1911 A>D>, and at Section 9 of said act, congress stated, "....that United States district courts are Legislative territorial court. empowered under Article I., of the federal Constitution, and authorized to operate under Article IV, under Admiralty-Equity jurisdiction. thus authorized to make needful rules and regulations for the territories, enclaves, and insular possession which belong to the federal "united States." SEE" Hornbuckle vs.. Toombs, 85 U.S.648 (1873): Palmore vs.. United States 411 U.S. 389 (1973): Graves vs.. Snead, 541 F.2d 159, 161 (1976). Cert.429 U.S. 1093 (1976).

When Congress intends to include legislative territorial courts in the phrase, "court of the United States," it does so expressly. In the Act providing for intervention by the "United States." in constitutional cases, and for regulations of the issuance of injunctions restraining enforcement of Acts of Congress. it stated that, "the term 'court of the United States' means the courts of record of Alaska, Hawaii, Puerto Rico, the United States Customs Patent Appeals, the Court of Claims, any District Court of the United States, any Circuit Curt of Appeals and the Supreme Court of the United States. "Act" of August 23, 1937, A>D> Section 5; 50 Stat.55.

Section 3002 (15) (A)] with respect to the several sovereign States of the Union, the "Arising under" clause does not apply as the Act is perpetrated under "color of Law." In other words, the Act of Congress, which is locally applicable to and in force [only] in the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, and the U. S. Virgin Islands (FRCP< Rule 54 (c)), and does not legitimately reach the several sovereign States or the Nation at Large.

The distinction between "arising under" as used under Article III and as used in Admiralty jurisdiction, particularly when admiralty authority is under congress' Article IV power, the jurisdiction of which is set out under Section 7, of the Title 18, of the United States Code, representing the "United States" interests which lie outside congress' role as the Article I Legislative body for national government, it being territorial in nature, and therefore must comply with the Law of Legislative jurisdiction. SEE: Caha vs.. United States, 152 U.S. 211, 215; Adams vs.. United States, 319 U.S. 312 (1943); People vs.. Godfrey, 17 Johns 225, (N.Y. 1818), at page 233.

In regards to the courts :Subject Matter" authority, it is found that under admiralty equity jurisdiction, that the alleged offense committed by an accused party, must be connected to an admiralty maritime contract in some form or another, and that such contract be set before the court, to

demonstrate that the accused party is in-fact a party to the contract, and is alleged to have breached the contract in some manner or form, otherwise the court would be without subject matter jurisdiction, and thereby unable to entertain the cause. It is further found that only Article III constitutional, or more commonly known "district courts of the United States," are the true judicial power courts, having the constitutional authority to invoke criminal jurisdiction. The greater number of congressional Statutes at Large, consistently direct the subject matter of the act to be set before Article III courts, and never a United States district court. The reason for this is that Article I Legislative territorial courts posses no Article III judicial power. Thus the question of Law arises as to the authority of a United States district court to entertain an alleged criminal matter, not connected to admiralty or equity, nor committed within the geographical parameters set out under Section 7 of Title 18, of the United Stated Code.

    Knowledge of the character of the court is significant in terms of the proper application of Section 3231, of Title 18, of the United States Code, where the federal statutory provision applies to Article III, "district courts of the United States", rather then United States district courts. This is found in the plain unambiguous language of the statute itself, as well as review of the historical section set out beneath the statutory provision,

wherein it is revealed that the section actually applies to Bank and Banking offenses. The statute Section 3231, Title 18, contains a dual nature, which extends the application of the statutory provision to the sovereign State courts as well as Article III federal courts.

Thus, if an accused party were not under the authority and jurisdiction of an Article I court, the statutory provision could not be invoked as a means of attempting to import an unknown form of statutory jurisdiction. By consulting the Parallel Tables of Authorities and Rules (1997 ed.) At page 733, it is found that Section 3231 is not listed, whereby supporting that the statute has no published authority in the Federal Register (44 U.S.C. Section 1505 (a) (1)), or published implementing regulations in the Code of Federal Regulations (1 C.F.R. 1, and 8.5), absent published authority and implementing regulations, the statute is restricted to application over federal agencies, officers, agents and employees of the federal government, only. SEE: United States vs. Mersky 361 U,S. 431, 438 (1960), and United States vs. Weldon 377 U.S. 95 (1964).

The character of the court is further significant where specific sections of Congressional acts (Statutes at Large) mandate that alleged violations of the act and/or its enumerated subsections, be brought before an Article III court, Section 402,(2)(c)(1), of 84 State. 1262 The

Congressional Controlled Substances Act. While "unenacted," into positive law (1 U.S.C. Section 204) the subsection, supra, supports the requirement of being entertained before the proper court.

It is likewise found under Section 1333, of Title 28, of the United States Code, which provides for Admiralty Maritime and Prize Cases. The statute calls for the jurisdiction of an Article III, Section 2, clause 1. "district court of the United States", to entertain civil actions, arising out of Admiralty Maritime Contracts or a breach there from. Section 1333, of Title 28, is likewise a statutory provision which is restricted to application over federal agencies, officers, agents and employees of the federal government, due to its failure to possess published authorities or implementing regulations. SEE: 26 C.F.R. 601-702 (ii).

Whereby, judicial power is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring the cause before the court. It is the right to determine actual controversies arising between diverse litigants, within duly instituted courts of proper jurisdiction Muskrat vs. United States, 219 U.S. 346, 361 (1911). Although, the terms "judicial powers" and "jurisdiction" are frequently used interchangeably, jurisdiction is defined as the power to hear and determine the subject matter in controversy between parties in or at suit. United States

vs. Arrendondo, 6 Pet.(31 U.S.) 691 (1832), or as the "power to entertain the suit, consider the merits, and render a binding decision thereon"

The court is therefore compelled to reveal and disclose its character, the article of the federal constitution under which it is empowered to operate, and its jurisdiction, or the congressional act, which created the court, and its powers, and its jurisdiction. The court is further compelled to disclose its authority to entertain non-admiralty causes, and its power which enables it to apply federal or state non-positive Law, private Law or Copyright Law over a private citizen, domiciled within the geographical boundaries of a sovereign States of the Union. That all courts and Laws at issues, supra, that such statutory provisions are in-fact unpublished, non-positive law.

In the Nature of FRCP, Rule 52 movant compels the courts to bring forth Findings of Fact and Conclusions of Law, Francis vs.. Goodman, 81 F.3d 5,8, (ist Cir.1996), concerning all matters raised heretofore, and herein.

# TERRITORIAL JURISDICTION

Comes now, James-Craig: Urban, accused and named as defendant" in the above captioned action, by special appearance and not by general appearance, and files this MOTION TO DISMISS FOR WANT OF TERRITORIAL JURISDICTION, and shows the Court as follows:

    1. That Defendant, by and through this motion, challenges the territorial jurisdiction of the Jurisdiction of the court can be challenged at any time. The federal courts have consistently held to the principle that **once jurisdiction is challenged the court has no authority to do anything but take action on that motion.**

---

Defendant is NOT a United States Fourteenth Amendment citizen and does not live "within" the boundaries of the Federal United States as will be overwhelmingly demonstrated by the Brief in Support of this motion. Defendant DOES NOT grant jurisdiction to this court by moving this court to comply with the mandates "in law" thereby demanding that the court comply with the Constitutional Injunction placed on the Federal Government at Article 1 Sec. 8 cl. 17. It is known to Defendant that the equity courts have rules allegedly prohibiting the court from taking an action unless a "motion" is filed. Defendants' " motion" is NOT a pleading that in any way acknowledges ANY form of jurisdiction but is rather a DEMAND that the Court require Plaintiff to prove jurisdiction, and absent proof of jurisdiction, dismiss the case for want of jurisdiction...

    2. As the Supreme Court held in *The State of Rhode Island v The State of Massachusetts, 37* U.S. 709, once the question of jurisdiction is raised "it must be *considered* and *decided* before the court can move one step further." [Italics added] "Jurisdiction cannot be assumed by a District Court nor conferred by agreement of parties, but it is incumbent upon plaintiff to allege in clear terms, the necessary facts showing jurisdiction
which must be proved by convincing evidence." *Harris v. American Legion,* 162 F. Supp. 700. [See also *McNutt v. General Motors Acceptance,* 56 S. Ct. 780.]

    3. Defendant has unequivocally denied the territorial and legislative jurisdiction of territorial courts from the outset.

    4. Territorial jurisdiction, "however inartfully plead, must be held to a less stringent standard than formal pleadings drafted by bar-admitted attorneys and can only be dismissed for failure to state a claim if it appears beyond a doubt that the defendant

can prove no set of facts in support of his claims which would entitle him to relief. "Haines v. Kerner, 404 U.S., 519-521; Richardson v. Flemming, 651 F 2d at 368 (quoting Estelle v. Gamble, 429 U.S, 97, 97 S, Ct, 285, 50 L.Ed.2d. 251, (1976); Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957); Alexander v Ware, 714 F2d 416 (1983);.

    5. Defendant respectfully notices this District court that it has no authority over Defendant or over the places "where" the purported activities allegedly occurred. In United States v. Watson, 80 F. Supp. 649 (E.D.Va., 1948), federal criminal charges were dismissed, the court stating as follows:

> **"Without proof of the requisite ownership or possession of the United States, the crime has not been made out,"** 80 F.Supp., at 651.

In United States v. Beason, 495 F.2d 475 (5th Cir., 1974), in finding federal jurisdiction for a robbery committed at Fort Rucker, the court stated:

> **"It is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefore,"** 495 F.2d, at 481.

    6. Defendants' business activities occur at his privately owned home and privately owned business establishment on Missouri. This court has jurisdictional authority on Missouri ONLY with regard to activities that occurred specifically "within" federal possessions located inside the territorial boundaries of Missouri.

    7. That Article 1 Section 8 Clause 17 of the United States Constitution is a **jurisdictional injunction against Federal encroachment,** to wit:

> "The Congress shall have Power…To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of Particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards and other needful Buildings; - And To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

8. The 6th Circuit and the District courts within the 6th Circuit have dealt specifically with the question of territorial jurisdiction on numerous occasions. In United States v. Penn, 48 F. 669 (E.D.Va., 1880), lacking federal jurisdiction over Arlington National Cemetery, a federal larceny prosecution was dismissed. In United States v. Watson, 80 F. Supp. 649 (E.D.Va., 1948), federal criminal charges were dismissed, the court stating as follows:

**"Without proof of the requisite ownership or possession of the United States, the crime has not been made out,"** 80 F.Supp., at 651.

In Kelly v. United States, 27 F. 616 (D.Me., 1885), federal jurisdiction of a manslaughter committed at Fort Popham was upheld when it was shown that the United states owned the property where the offense occurred and the state had ceded jurisdiction. In United States v.Andem,158 F. 996 (D.N.J., 1908), federal jurisdiction for a forgery offense was upheld on a showing that the United States owned the property where the offense was committed and the state had ceded jurisdiction of the property to the United States. Some additional cases in which courts of the 4th circuit have consistently upheld the territorial jurisdictional mandate at 1.8.17 U.S. Const. are: Adams v. Londeree, 139 W. Va. 748, 83 S.E. 2d 127 (1954); Carnegie-Illinois Steel Corp. v. Alderson, 127 W.Va. 807, 34 S.E. 2d 737 (1945), cert. den., 326 U.S. 764; Laing, In re. 127 Fed. 213 (C.C.S.D.W. Va., 1903); Air Terminal Services, Inc. v. Rentzel, 81 F. supp. 611 (E.D. Va., 1949); Andrews v. Auditor, 69 Va. 115 (1877); Buttery v. Robbins, 177 Va. 368, 14 S.E. 2d 544 (1941); Bank of Phoebus v. Byrum, 110 Va. 708 67 S.E. 349 (1910); Carnegie-Illinois Steel Corp. v. Alderson, 127 W.Va. 807 34 S.E. 2d 737 (1945); County of Norfolk v. Portsmouth, 186 Va. 1032, 45 S.E. 2d 136 (1947); County of Prince William v. Thomason Park, 197 Va. 861, 91 S.E. 2d 441 (1956); Crook, Homer & Co. v. Old Point Comfort Hotel Col, 54 Fed. 604 (C.C.E.C. Va., 1893); Crowder v. Virginia, 197 Va. 96. 87 S.E. 2d 745 (1955), app. dism., 350 U.S. 957; Edelstein v. South Post Officers Club, 118 F. Supp. 40 (E.D.Va., 1951); Foley v. Shriver, 81 Va.568; Hall v. Commonwealth, 129 Va. 738, 105 S.E. 551 (1921); Hercules Powder Co. v. Ruben, 188 Va. 694, 51 S.E. 2d 149 (1949); Lima v. Lawler, 63 F. Supp. 446 (E.D.Va., 1945); McLaughlin v. Bank of Potomac, 48 Va. 68 (1850); Nash v. Air Terminal Services, Inc. 85. F. Supp. 5545 (E.D.Va., 1949); Nikis v. Commonwealth, 144 Va. 618, 131 S.E. 236 (1926); Norfolk & P.B.L.R. v. Parker, 152 Va. 484, 147 S.E. 461 (1926); Randolph v.

Commonwealth, 145 Va. 883, 134 S.E. 544 (193=26); Sollitt & Sons Const. Comp. v. Commonwealth, 161 Va. 854, 172 S.E. 290 (1934), app. dism., 292 U.S. 599; Tatem, Ex parte, 23 Fed Cas. 708, No. 13, 759 (E.D. Va., 1877); United States v. Crary, IF. Supp. 406 (W. D. Va., 1932); United States v. McIntosh, 57 F 2d 573, 2 F. Supp. 244 (E.D. Va., 1932); United States v Penn., 48 Fed. 669 (C.C.E.C. Va., 1880); United States v. Prince William County, 9 F. Supp. 219 (E.D.Va., 1934), affd., 79 F.2d 1007 (C.A. 4, 1935), cert. den., 297 U.S. 714; United States v. Watson, 80 F. Supp. 649 (E.D. Va., 1948); United States v. William R. Trigg Co., 115 Va. 272, 78 S.W. 542 (1912); Victor Valley Housing Corp. v. County of San Bernardino, 45 Ca.2d 580, 290 P.2d 565 (1955); Virginia v. Stiff, 144 F. Supp. 169 (W.D. Va., 1956); Waltrip v. Commonwealth, 189 Va. 365, 53 S.E.2d 14 (1949); Western Union Tel. Co. v. Richmond, 67 Va. 1 (1875); Woodfin v. Phoebus, 30 Fed. 289 (C.C.E.D. Va., 1887).

9. That in June 1957, the government of the United States published a work entitled Jurisdiction Over Federal Areas Within The States: Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas Within the States. Part II of the Study, entitled A Text of Law, was completed by the 48 Attorneys General of the several states, to wit:

> "**The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any area within the exterior boundaries of a State.** Article 1, section 8, clause 17 of the Constitution, provides that legislative jurisdiction may be transferred pursuant to its terms ONLY with the consent of the legislature of the State in which is located the area subject to the jurisdictional transfer. As was indicated in Chapter 11, **the consent requirement of article 1, section 8, clause 17, was intended by the framers of the Constitution to preserve the State's jurisdictional integrity against Federal encroachment.**" Id., at 46. [emphasis added].
>
> "**The Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction – by State consent under Article 1, section 8, clause 17** ... Justice McLean suggested that the constitution provided the sole mode for transfer of jurisdiction, and that if this mode is not pursued, no transfer of jurisdiction can take place," Id., at 41. [emphasis added].
>
> It scarcely needs to be said that unless there has been a transfer of jurisdiction (1) pursuant to clause 17 by a Federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon the admission of the State, **the Federal Government possesses NO legislative jurisdiction over any area within a State,** such jurisdiction being for exercise by the State," Id., at 45. [emphasis added]

10. That this <u>Text</u> of <u>Law</u> complied by the 48 Attorneys General of the several State republics in 1957, as cited hereinabove, referenced nearly seven hundred court cases, including over 100 United States Supreme Court cases, just like the one quoted in this summary. Thus, from an abundance of judicial opinion, buttressed by this definitive government treatise researched and complied pursuant to Presidential Order of Dwight Eisenhower, the "jurisdiction of the United States" is carefully circumscribed and <u>defined</u> as a ver <u>precise</u> <u>portion</u> of <u>America,</u> that <u>portion</u> being <u>the District of Columbia and the federal enclaves purchased</u> and <u>possessed</u> the <u>Federal United States</u>.

11. That the application of this principal is clearly stated in <u>Caha v. United States,</u> the U.S. Supreme Court finding as follows:

> **"The laws of Congress... do not extend** into the territorial limits of the states, but have force ONLY in the district of Columbia, and other places that are WITHIN the EXCLUSIVE jurisdiction of the national government." 152 U.S. 211, 215, 12 S.Ct. 513 (1894) [emphasis added]

12. That in <u>United States v. Bevans,</u> 16 U.S. (3 Wheat.) 336 (1818), which involved a federal prosecution for a murder committed on broad the Warship, Independence, anchored in the harbor of Boston, Massachusetts, the defense complained that only the state had jurisdiction to prosecute, and argued that the federal Circuit Courts had no jurisdiction of this crime supposedly committed within the federal government's admiralty jurisdiction. In argument before the Supreme Court, <u>counsel</u> for the <u>United States</u> <u>admitted</u> as follows:

> "The exclusive jurisdiction which the United States has in forts and dockyards ceded to the, is derived from the express assent of the states by whom the cessions area made. It could be derived in no other manner; because without it, the authority of the state would be supreme and exclusive therein," 3 Wheat., at 350, 351.

That In holding that the State of Massachusetts had jurisdiction over the crime, the U.S. Supreme Court held:

> "What, then, is the extent of jurisdiction which a state possesses?"
> "We answer, without hesitation, the jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power," 3 Wheat., at 386, 387
> "The article which describes the judicial power of the United States is not intended for the cession of territory or of general jurisdiction... Congress has power to exercise exclusive jurisdiction over this district, and over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful

buildings." "It is observable that the power of exclusive legislation (which is jurisdiction) is united with cession of territory, which is to be the free act of the states. It is difficult to compare the two sections together, without feeling a conviction, not to be strengthened by any commentary on them, that, in describing the judicial power, the framers of our Constitution had not in view any cession of territory; or, which is essentially the same, of general jurisdiction," 3 Wheat., at 388.

13. That in Commonwealth v. Young, Brightly, N.P. 302 (Pa., 1818), the Supreme Court of Pennsylvania was presented with the issue of whether lands owned by the United States for which Pennsylvania had never ceded jurisdiction had to be sold pursuant to state law. In deciding that the state law of Pennsylvania exclusively controlled this sale of federal land, the Court held:

> "The legislation and authority of congress is confined to cessions by particular states for the seat of government, and purchases made by consent of the legislature of the state, for the purpose of erecting forts. The legislative **power and exclusive jurisdiction remained** in the **several states, of all** territory within their limits, **not ceded to, or purchased by, congress, with** the assent of the state legislature, to prevent the **collision of legislation and** authority between the United States **and the several states**," Id., at 309.

14. That In **New Orleans v. United States,** 35 U.S. (120 Pet.) 662 (1836), the United States claimed title to property in New Orleans likewise claimed by the city. After holding that title to the subject lands was owned by the city, the U. S. Supreme Court addressed the question of federal jurisdiction and stated:

> "Special provision is made in the Constitution for the cession of jurisdiction from the states over places where the federal government shall establish forts or other military works. And it is ONLY in these places, or in the territories of the United States, where it can exercise a general jurisdiction." 10 Pet., at 737. [emphasis added]

15. That in New York v. Miln, 36 U.S. (11 Pet.) 102 (1837), the question before the U.S. Supreme Court involved the attempt by the City of New York to assess penalties against the master of a ship for his failure to make a report as to the persons his ship brought to New York. As against the master's contention that the act was unconstitutional and that New York had jurisdiction in the matter, the U.S. Supreme Court held:

> "If we look at the place of its operation, we find it to be within the territory, and, therefore, within the jurisdiction of New York. If we look at the person on whom it operates, he is found within the same territory and jurisdiction," 36 U.S., at 133.

> "A State has the same undeniable and unlimited jurisdiction over all persons and things within its territorial limits, **as any foreign nation,** where that jurisdiction is not surrendered or restrained by the Constitution of the United States. That, by virtue of this, it is not only the right, but the burden and solemn duty of a State, to advance the safety, happiness and prosperity of its people, and to provide for its general welfare, by any and every act of legislation which it may deem to be conducive to these ends; where the power over the particular subject, or the manner of its exercise is not surrendered or restrained, in the manner just stated. That all those powers which relate to merely municipal legislation, or what may, perhaps, more properly be called internal police, are not thus surrendered or restrained; and that, consequently, in relation to these, **the authority of a State is complete, unqualified and exclusive,**" 36 U.S., at 139.

16. That in <u>Pollard v. Hagan,</u> 44 U.S. (3 How.) 212 (1845), the question of federal jurisdiction was once again before the Court. This case involved a contest of the title to real property, with one of the parties claiming a right to the disputed property via a United States patent; the lands in question were situated in Mobile, Alabama state, adjacent to Mobile Bay. In discussing the subject of federal jurisdiction, the U. S. Supreme Court held:

> "**We think a proper examination of this subject will show that the UNITED STATES NEVER HELD ANY MUNICIAL SOVEREIGNTY, JURISDICTION, or right of soil in and to the territory, of which Alabama or any of the new states were formed,**" 44 U.S., at 221.
> "**[B]ecause, the United States has no constitutional capacity to exercise municipal jurisdiction, sovereignty, or eminent domain, within the limits of a State or elsewhere, except in the cases in which it is expressly granted,**" 44 U.S., at 223.
> "**Alabama state is therefore entitled to the sovereignty and jurisdiction over all the territory within her limits, subject to the common law,**" 44 U.S., at 228, 229.

17. That in <u>Fort Leavenworth R. Co. v. Lowe,</u> 114 U. S. 525 S.Ct. 995 (1885), the railroad company property that passed through the Fort Leavenworth federal enclave was being subjected to taxation by Kansas, and the company claimed an exemption from state taxation. In holding that the railroad company's property could be taxed, the U.S. Supreme Court carefully explained federal jurisdiction within the states:

> The consent of the states to the purchase of lands within them for the special purposes named, is, however, essential, under the constitution, to the transfer to the general government, with the title, of political jurisdiction and dominion. Where lands are acquired without such consent, the **possession of the United**

**States, unless political jurisdiction be ceded to them in some other way, is simply that of an ordinary proprietor.** The property in that case, unless used as a means to carry out the purposes of the government, is subject to the legislative authority and control of the states equally with the property of private individuals," 114 U.S., at 531.

18. That upon information and belief the locations where the purported activities occurred are situated upon parcels of privately owned land that are NOT, so called, Federal Enclaves, and are NOT "within" the territories of the Federal United States and are NOT possessions of the Federal United States.

19. That upon information and belief the said parcels of privately owned land are NOT subject to partial, exclusive, or to any other extent, Federal Territorial and Legislative Jurisdiction.

20. That in the absence of Federal Territorial and Legislative Jurisdiction over the location of the purportedly violative activity of the undersigned, as set forth above, the Federal Government has no authority to prohibit, restrict or prosecute Defendant for any activity occurring at his privately owned home and privately owned business establishment.

21. That in the absence of Federal Territorial and Legislative Jurisdiction over the location of the purportedly violative activity of the undersigned, as set forth above, the Court was and is in want of jurisdiction to adjudicate the matters alleged against Defendant in the above captioned action.

22. Defendant contends that the issue of territorial and legislative jurisdiction of the Federal Government over the geographical area, in which the purportedly prohibited activities of Defendant is alleged to have occurred, must be unequivocally established before the Court can proceed.

"Unequivocal" defined – Clear; plain; capable of being understood in only one way, or as clearly demonstrated. Free from uncertainty, or without doubt; and when used in reference to <u>burden</u> of <u>proof,</u> it implies proof of the highest possible character and it imports proof of the nature mathematical certainty. Black's Law Dictionary Sixth Ed.

## CONCLUSION

The two jurisdictional issues as discussed above are specific to the direction given by

Congress to the action of the courts. One cannot merely switch the court to give the new court jurisdiction. In issues of diversity the court filed in must be the one to handle the case or specific voluntary consent must be given by both parties. A non U.S. citizen cannot be held to an Article I court. In this case the Plaintiffs do not consent to a trritorial court.

<u>I am not an expert in the law; however, I know right from wrong.</u> If there is any human being damaged by any statement herein, if he will inform me by facts I will sincerely make every effort to amend my ways. I hereby and herein reserve the right to amend and make amendments to this document as necessary in order that the truth may be ascertained and proceedings justly determined. If the parties given notice by means of this document have information that would controvert and overcome this affidavit, please advise me in written affidavit form within the allotted time (21 days) from receipt hereof providing me with your counter affidavit by all requisite actual evidentiary fact and all requisite actual law, and not merely the ultimate facts or conclusions of law, that this affidavit statement is substantially and materially false sufficiently to change materially my status and factual declarations. Your silence stands as consent to, and tacit approval of, the factual declarations herein being established as fact as a matter of law. May the will of our Heavenly Father through the power and authority of the blood of his Son be done on earth as it is in Heaven.

Service to the agent is service to the principle; Service to the principle is service to The agent. Further sayeth affiant not.

Date: October 22, 2007

By: _____
James-Craig: Urban